**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 07-5094**

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

LANNIKKO SANTIAGO,

        Defendant - Appellant.

Appeal from the United States District Court for the District of Maryland, at Baltimore. William D. Quarles, Jr., District Judge. (1:06-cr-00570-WDQ-1)

Submitted: August 21, 2009      Decided: September 18, 2009

Before MOTZ, KING, and DUNCAN, Circuit Judges.

Affirmed by unpublished per curiam opinion.

James Wyda, Federal Public Defender, Martin G. Bahl, Staff Attorney, Baltimore, Maryland, for Appellant. Rod J. Rosenstein, United States Attorney, Michael C. Hanlon, Assistant United States Attorney, Baltimore, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Lannikko Santiago appeals his jury conviction and sentence on charges of possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (2006) (Count One), and possession of a firearm with an obliterated serial number, in violation of 18 U.S.C. § 922(k) (2006) (Count Two). The district court sentenced Santiago to 120 months' imprisonment on Count One and 60 months' imprisonment on Count Two, to run concurrent with Count One, for a total term of 120 months, and imposed a three-year term of supervised release as to Counts One and Two, to run concurrently with each other. Santiago claims three errors on appeal. First, he challenges the district court's denial of his pre-trial motion to suppress the firearm on the ground that the traffic stop was invalid. Second, he claims error by the district court in allowing the admission at trial of evidence of his gang membership. Finally, Santiago challenges the sufficiency of the evidence supporting his conviction on Count Two. For the reasons that follow, we affirm.

The basis for Santiago's Fourth Amendment challenge to the district court's denial of his motion to suppress the firearm found in plain view in the backseat of the vehicle in which Santiago was a passenger is his assertion that police officers did not have probable cause to stop the vehicle. This

2

court reviews legal conclusions underlying the denial of a motion to suppress de novo, and factual findings for clear error. United States v. Moreland, 437 F.3d 424, 429 (4th Cir. 2006).

In his statement of probable cause, one of the three arresting police officers, Detective Dennis Workley, stated that the three officers observed the Crown Victoria "drive through Montford and Preston Streets at a slow rate of speed." He further stated, "The vehicle then traveled eastbound and rolled through the stop sign at Preston and Port Street. The vehicle then made a right hand turn into the 1200 block of N. Milton Ave., traveling southbound." The police subsequently conducted a traffic stop of the vehicle, based on the stop sign violation, which stop and search resulted in the discovery of the firearm at issue.

At the suppression hearing, Detective Workley testified that he and officers Louis Holley and Lamont Davis noticed a Crown Victoria driving at an unusually slow rate of speed north on Montford Street. The officers followed the car and witnessed it make a number of turns around the neighborhood. After detailing the route taken by the Crown Victoria, Detective Workley testified that he saw the car make a "rolling stop" through the stop sign at the Port Street/Preston Street intersection before continuing on to Milton.

3

Santiago claimed that the statement of probable cause was inconsistent with Detective Workley's hearing testimony, alleging that the report implied a right hand turn directly from Montford to Preston, rather than the intervening drive down Hoffman and Port Streets described during the testimony. During the hearing on the motion to suppress, Detective Workley agreed the report would have been more accurate if it had provided a complete description of the car's activities, including its turns on Hoffman. In addition, both Detectives Workley and Holley testified at the motions hearing that the Crown Victoria was traveling southbound on Port Street when it committed the stop sign violation, in some contrast to Detective Workley's probable cause statement that it "traveled eastbound and rolled through the stop sign at Preston and Port Street."[1]

At the conclusion of the hearing, the district court found no literal inaccuracy in the probable cause statement, that is, that the Crown Victoria had traveled through the Montford/Preston intersection, had turned right, and had run a stop sign at Preston and Port, which was consistent with the testimony of both detectives. The district court ruled that the

---

[1] While acknowledging that the report provided an incomplete description of the various routes and turns taken by the car, in that it omitted the reference to Hoffman and Port, the Government alleged that the probable cause statement was written as a summary.

traffic stop was not unconstitutional, that the police had properly stopped the car in which Santiago was a passenger, after determining that the car had run a stop sign, and then denied Santiago's motion to suppress the firearm.

We find no "definite and firm conviction that a mistake has been committed,"[2] and therefore find no clear error by the district court in its construction of the Detective Workley's statements in his probable cause statement. There is no ambiguity or disagreement between Detective Workley's and Holley's statements at the hearing and the statement supporting probable cause that the car in which Santiago was a passenger travelled "through Montford and Preston Streets" then "traveled eastbound" and failed to make a complete stop at the Port Street stop sign. Moreover, the district court was in the best position to make the determination of whether the report was consistent with the testimony of the police officers. See United States v. Stevenson, 396 F.3d 538, 543 (4th Cir. 2005). That the report could have been more clear and perhaps more detailed is of no moment. The fact remains that it is consistent in the material fact—that is that the vehicle ran a stop sign and that that violation gave rise to probable cause to

---

[2] See United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948); United States v. Singh, 363 F.3d 347, 354 (4th Cir. 2004)

stop the vehicle and to subsequently search the vehicle, which led to the discovery of the firearm that was in plain view. The district court's denial of Santiago's motion to suppress was not clearly erroneous.

Santiago next claims error by the district court in allowing the admission at trial of evidence of his gang membership. Specifically, following the reading of his Miranda[3] rights, Santiago told Detective Workley that he was a member of a street gang called the "MOB Pirus," a set of the Bloods, a Los Angeles-based street gang. He admitted that he was a member of a particular subgroup, the "bounty hunters," who were employed by the Bloods to take violent action against rival groups, including other Bloods sets if so instructed by the gang. He stated that his set was engaged in a conflict with an eastern Baltimore gang called the "L Gang," and that the Bloods had placed an "EOS" on the L Gang.[4] Santiago's admissions relative to his gang membership and photographs of tattoos depicting his

---

[3] See Miranda v. Arizona, 384 U.S. 436 (1966).

[4] Detective Workley was qualified by the district court as an expert in gang operations and jargon, and testified at trial that "EOS" stood for "eat on sight," which meant that the Bloods had issued an order calling for its members to carry out violence against any members of the L Gang. Detective Workley also testified that the neighborhood in which Santiago was arrested was the territory of the L Gang.

membership in the Bloods organization were disclosed to the jury at trial.

Fed. R. Evid. 403 is a rule of inclusion, "generally favor[ing] admissibility . . . ." United States v. Wells, 163 F.3d 889, 896 (4th Cir. 1998). District judges enjoy wide discretion to determine what evidence is admissible under the Rule. See United States v. Love, 134 F.3d 595, 603 (4th Cir. 1998). We "review a district court's admission of evidence over a Rule 403 objection under a broadly deferential standard." Id. (internal quotations omitted). Indeed, "[a] district court's decision to admit evidence over a Rule 403 objection will not be overturned except under the most extraordinary of circumstances, where that discretion has been plainly abused." United States v. Williams, 445 F.3d 724, 732 (4th Cir. 2006) (internal quotations omitted). In reviewing the admission of evidence, we construe the evidence in the "light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect." United States v. Simpson, 910 F.2d 154, 157 (4th Cir. 1990).

Here, we find that Santiago's membership in the Bloods, his admission of being a bounty hunter, and his presence in rival gang territory explain the reason he was carrying a firearm—to facilitate his gang activities. The gang evidence was, therefore, intrinsic to the firearm possession as it

7

provided the reason for the gun possession,[5] and provided the jury with background information as to the possession of the firearm.[6] Nor do we find that, in this case, the probative value of the evidence was "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Crim. P. 403. See United States v. Basham, 561 F.3d 302, 329 (4th Cir. 2009) (citing United States v. Grimmond, 137 F.3d 823, 832 (4th Cir. 1998)). We cannot say that the district court's admission of the evidence of Santiago's gang membership was an abuse of discretion.

Santiago's final challenge on appeal is to the sufficiency of the evidence on the charge of knowing possession of a firearm with an obliterated serial number. We are obliged to sustain a guilty verdict if, viewing the evidence in the light most favorable to the prosecution, the verdict is supported by substantial evidence. United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996) (en banc) (citing Glasser v. United States, 315 U.S. 60, 80 (1942)). We have defined

---

[5] See United States v. Chin, 83 F.3d 83, 88 (4th Cir. 1996).

[6] See United States v. Kennedy, 32 F.3d 876, 885, 886 (4th Cir. 1994).

"substantial evidence" as "evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." Burgos, 94 F.3d at 862. We "consider circumstantial as well as direct evidence, and allow the government the benefit of all reasonable inferences from the facts proven to those sought to be established," United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982), and we assume that the jury resolved all contradictions in the testimony in favor of the Government. United States v. Brooks, 524 F.3d 549, 563 (4th Cir.), cert. denied, 129 S. Ct. 519 (2008). We "can reverse a conviction on insufficiency grounds only when the prosecution's failure is clear." United States v. Moye, 454 F.3d 390, 394 (4th Cir. 2006) (en banc) (internal quotation marks and citation omitted).

Pursuant to 18 U.S.C. § 922(k), it is "unlawful for any person knowingly to transport, ship, or receive, in interstate or foreign commerce, any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered and has, at any time, been shipped or transported in interstate or foreign commerce." To establish a violation of § 922(k), the Government must prove, beyond a reasonable doubt, that Santiago: (1) knowingly possessed the firearm, and (2) had knowledge that the serial number of the possessed firearm had been removed, obliterated, or altered. See United States v.

9

<u>Johnson</u>, 381 F.3d 506, 508 (5th Cir. 2004); <u>see</u> <u>also</u> <u>United</u> <u>States</u> <u>v.</u> <u>Sullivan</u>, 455 F.3d 248, 261 (4th Cir. 2006) ("The defendant must know of the alteration.").

Santiago asserts on appeal that there was no evidence to suggest that he regularly carried the firearm in question, or that he was aware that the firearm in question had an obliterated serial number. However, while simply carrying a firearm is insufficient to establish a violation of § 922(k), the evidence here was that Santiago possessed the firearm as a gang member, in rival gang territory, and at a time when he was expected to perform his duty as a "bounty hunter" to "eat on sight" members of the enemy gang. It was, therefore, reasonable for the jury to find that Santiago would have possessed a firearm with an obliterated serial number, rather than one that could have been more easily traced or identifiable, and that Santiago would have been familiar with the weapon he was carrying in connection with that activity such that he would know the firearm had an obliterated serial number.[7] Thus, viewing the evidence in the light most favorable to the prosecution, we find that the jury's verdict on Count Two is supported by substantial evidence. <u>See</u> <u>Burgos</u>, 94 F.3d at 862.

---

[7] In addition, the evidence revealed that the gun displayed physical evidence of scratches and obliteration.

10

Accordingly, we affirm Santiago's conviction and sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>