**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Edwin Paxton ROBINSON, Defendant-Appellant.**

**No. 20105.**

United States Court of Appeals, Sixth Circuit.

Sept. 4, 1970.

Mayer Morganroth (Court Appointed), Detroit, Mich., for defendant-appellant.

J. Kenneth Lowrie, Asst. U. S. Atty., Detroit, Mich., for plaintiff-appellee, James H. Brickley, U. S. Atty., Henry J. Maher, Asst. U. S. Atty., Detroit, Mich., on brief.

Before CELEBREZZE and PECK, Circuit Judges, and O'SULLIVAN, Senior Circuit Judge.

JOHN W. PECK, Circuit Judge.

Appellant, Edwin Paxton Robinson, and a codefendant, Edward Zak, were brought to trial in the District Court under an indictment charging them with three counts of armed bank robbery, in violation of 18 U.S.C. § 2113(a) and (d). The first two counts of the indictment charged the successive armed robberies, on September 19, 1967, and October 24, 1967, of the Dix Avenue branch of the Bank of the Commonwealth in Detroit, Michigan; the third count charged the robbery, on December 4, 1967, of the Warren Bank, Warren, Michigan. At the conclusion of all the evidence at trial, the District Court granted Zak's motion for judgment of acquittal with respect to the third count of the indictment, and submitted the remaining issues to the jury. The jury returned a verdict convicting appellant on all three counts of the indictment and acquitting Zak of the remaining two counts with which he was charged. Appellant perfected this appeal, contending that a hat which was introduced into evidence against him at trial was the product of an illegal search and seizure, and that his conviction must therefore be reversed.

The government's evidence against both appellant and Zak under the first two counts of the indictment rested heavily upon the testimony of an alleged accomplice, Benjamin Luke, who pled guilty to those two robberies prior to the trial. Because the robbers wore stocking masks over their faces, none of the bank employees present during the robberies could make a positive identification of either of the defendants after

their arrest.[1] However, Luke's testimony described in detail the activities of each of the alleged participants in the robberies, and some of those details, such as the description of the clothing worn by the robbers and of their getaway car, were corroborated by bank employees.

One of the corroborative items of evidence was the hat referred to above. It was first identified by one of the bank tellers as similar to a hat worn by one of the participants in the second robbery. Luke later identified the hat as similar to the hats both he and appellant wore during the second robbery. Based on this identification, and over appellant's objection on the grounds of relevancy, the hat was admitted into evidence. Subsequent evidence showed that the hat had been seized by FBI agents during a search of the appellant's apartment on January 8, 1968, some 34 days after his arrest for the Warren Bank robbery. The evidence further showed that although appellant was continuously incarcerated during this intervening period, giving the agents an adequate opportunity to secure a search warrant, no warrant for the search was obtained. Instead, the agents merely sought and received the permission of the building manager to conduct the search of the apartment.

Upon disclosure of the circumstances of the seizure of the hat, appellant moved for a mistrial on the grounds that the hat was the product of an illegal search of his apartment. The District Court denied the motion, holding that the apartment had been abandoned by appellant at the time of the search.

The principal issue here is thus whether appellant had abandoned the apartment at the time of the search, it being undisputed that the building manager's consent to the search would be ineffective as a waiver of appellant's Fourth Amendment rights without an abandonment on his part. See Chapman v. United States, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1960). Whether premises have been abandoned so as to sanction the warrantless search raises a significant issue of the intent of the occupier of the premises, since his mere absence from the premises without an intent to abandon could not legitimize such a search. Friedman v. United States, 347 F.2d 697, 704 (8th Cir.), cert. denied, 382 U.S. 946, 86 S.Ct. 407, 15 L.Ed.2d 354 (1965); United States v. Minker, 312 F.2d 632, 634–635 (3rd Cir.), cert. denied, 372 U.S. 953, 83 S.Ct. 952, 9 L.Ed.2d 978 (1963). While the intent of one in possession of property often cannot be directly shown but must be inferred from his actions, abandonment will not be presumed. It must be clearly shown by the party asserting it. Coleman v. Maxwell, 387 F.2d 134, 135 (6th Cir. 1967), cert. denied, 393 U.S. 1007, 89 S.Ct. 492, 21 L.Ed.2d 472 (1968); Friedman v. United States, supra; Linscomb v. Goodyear Tire & Rubber Co., 199 F.2d 431, 435 (8th Cir. 1952). Moreover, where, as here, the party's absence from the premises is involuntary because of his arrest and incarceration, the government should bear an especially heavy burden of showing that he intended to abandon them. This the government has not done.

In denying the appellant's motion for a mistrial, the District Court relied on the testimony of two witnesses to conclude that appellant had abandoned the apartment at the time of the search. The first witness was the building manager who permitted the FBI agents to search the apartment. Viewed most favorably to the government, his testimony was that he considered the apartment abandoned at the time of the search because the appellant had been absent therefrom without having paid any rent for over a month. However, as indicated, the building manager's belief that

---

1. One bank teller made an in-court identification of appellant, but that identification was subsequently weakened by a number of facts, including the fact brought out on cross-examination that she had failed to identify appellant at a lineup conducted shortly after the robbery.

appellant had abandoned the apartment was premised solely on the fact of appellant's absence and thus sheds no light on appellant's intention to return to the apartment. It was therefore totally irrelevant to the issue.

■ The second witness was a Miss Shirley Case, a friend of appellant's wife, who testified that she and appellant's wife went to appellant's apartment (appellant and his wife were not living together at the time) and removed some of his belongings in December 1967. However, her entire testimony on this point was contained in her response to one leading question,[2] and cannot be considered as evidence of an intent to abandon the premises on appellant's part. We must therefore conclude that the government failed to show that the premises had been abandoned by appellant at the time of the search, that the warrantless search of the premises was therefore unlawful, and that receipt of the hat into evidence constituted error.

■ There remains the question of whether the error requires reversal of appellant's conviction under one or more counts of the indictment. More precisely, the question is whether the government has on appeal shown "beyond a reasonable doubt that the error complained of did not contribute to the verdict[s] obtained." Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967).

We begin by recalling that with respect to the first two counts of the indictment, the government's evidence against both appellant and his codefendant Zak consisted primarily of the testimony of the alleged accomplice, Benjamin Luke, and that, although the testimony implicated appellant and Zak equally in the two Bank of the Commonwealth robberies, appellant was convicted while Zak was acquitted. Under such circumstances it cannot be said that the corroborative evidence of the hat, introduced only against the appellant, did not contribute to appellant's guilty verdicts under the first two counts of the indictment.

The government's evidence under the third count of the indictment, the Warren Bank robbery, was linked in many respects to the evidence under the first two counts. The government relied on the facts that the method of operation in the Warren Bank robbery was similar to that used in the first two robberies, that the same automobile was used in connection with all three robberies, and that appellant was arrested at a stake-out of that automobile which apparently had been abandoned after the Warren robbery. There was the additional fact of appellant's wife's use of a "bait" bill from the Warren Bank to pay her rent shortly after that robbery, but, as with all of the other evidence under the third count, this was merely circumstantial. Cf. Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969). Because of the way in which the evidence under the third count of the indictment was related to the first two counts, we must conclude that there was "a reasonable possibility that the evidence complained of might have contributed to the conviction." Fahy v. Connecticut, 375 U.S. 85, 86–87, 84 S.Ct. 229, 230, 11 L.Ed.2d 171; Chapman v. California, supra.

The judgment of the District Court is therefore reversed, and the cause is remanded for further proceedings consistent herewith.

2. "Q. [By the United States Attorney] Do you recall that in December of 1967 you went to his apartment with [appellant's wife] for the purpose of getting his belongings?
  "A. Yes."