PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee,*

v.                                    No. 04-4227

LEE RONALD STEVENSON,
        *Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of West Virginia, at Clarksburg.
Irene M. Keeley, Chief District Judge.
(CR-03-46)

Argued: December 3, 2004

Decided: February 1, 2005

Before WILKINS, Chief Judge, and NIEMEYER
and DUNCAN, Circuit Judges.

_____

Affirmed by published opinion. Judge Niemeyer wrote the opinion, in which Chief Judge Wilkins and Judge Duncan joined.

_____

## COUNSEL

**ARGUED:** Brian Joseph Kornbrath, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Clarksburg, West Virginia, for Appellant. Robert H. McWilliams, Jr., Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Wheeling, West Virginia, for Appellee. **ON BRIEF:** Thomas E. Johnston, United States Attorney, Wheeling, West Virginia, for Appellee.

**OPINION**

NIEMEYER, Circuit Judge:

Lee Ronald Stevenson was convicted of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g), and sentenced to 84 months' imprisonment, 48 months to be served consecutively to a sentence of imprisonment he is currently serving in Michigan. On appeal, Stevenson challenges the district court's denial of his motion to suppress the firearms seized without a warrant from an apartment that he had leased on a week-to-week basis in Weston, West Virginia.

The district court found as a fact that prior to the search of Stevenson's apartment and the seizure of the firearms, Stevenson was in custody on an unrelated charge and had formed an intention not to return to the apartment, as manifested principally by a letter he wrote to his girlfriend, giving her ownership of the personal property in his apartment and referring to himself as the "former renter." The court concluded, based on its finding as to Stevenson's intentions, that "Stevenson waived any reasonable expectation of privacy in his former apartment" and therefore that "the search of the apartment . . . did not violate Stevenson's Fourth Amendment rights."

Deferring to the district court's factual findings, even though they were based principally on documentary evidence, we conclude that the district court did not clearly err; and we agree with the district court's legal conclusion that, as a matter of law, Stevenson's Fourth Amendment right to be secure against unreasonable searches and seizures was not violated. Accordingly, we affirm.

I

On January 20, 2003, Stevenson was arrested in Lewis County, West Virginia, on a fugitive warrant that issued from Michigan when he failed to appear there for sentencing on a felony criminal sexual conduct conviction. The day after Stevenson's arrest, while he was still in police custody, Stevenson wrote his one-time girlfriend, Connie Blake, a letter transferring to her all of his personal property in his apartment and referring to himself as the "former renter" of the

apartment. The letter, which Blake received on January 22, 2003, reads in relevant part:

> Receipt for Personal Property:
>
> On this day, *Jan. 21, 2003*, I *Lee R. Stevenson*, a.k.a. *Levi Yoder*, former renter of the apt. on 642 Court St. Weston W. Va. owned by Greg Floyd, hereby transfer/give, *Ms. Connie Blake*, full rights to possession and ownership of all my personal property in apt. 642.

Stevenson had rented the apartment on a week-to-week basis for $100 per week from Greg Floyd in late November or early December 2002. After making the first two payments and moving into the apartment, Stevenson immediately fell behind in the rent. When Floyd and Stevenson discussed the situation in January 2003, Floyd indicated that he was willing to work with Stevenson to pay back the rent. They discussed the possibility of Stevenson's working for Floyd or Stevenson's accumulating money through odd jobs and paying the back rent as soon as possible. Stevenson never completed that arrangement, however, because he was arrested on January 20, 2003. By the time of his arrest, Stevenson was $500 in arrears.

On January 24, 2003, Sergeant David Parks of the Lewis County Sheriff's Department received a fax from Michigan, asking for help gathering evidence relating to an arson investigation involving Stevenson. That same day, Parks obtained a search warrant to search a motor home owned by Stevenson, but found no evidence there. After learning of Stevenson's apartment at 642 Court Street in Weston, Sergeant Parks called Floyd, Stevenson's landlord, to obtain Floyd's permission to search the apartment. Floyd consented to the search and told Parks how to enter the apartment. Parks, accompanied by Floyd's father and brother, searched the apartment without a warrant, discovering two firearms — a Winchester Model 94 30-30 caliber rifle, and an Iver Johnson .32 caliber revolver — and seized them, aware that Stevenson had previously been convicted of a felony.

After the government indicted Stevenson with being a felon in possession of a firearm, Stevenson moved to suppress the firearms, contending that the search of his apartment was illegal because Sergeant

Parks had failed to obtain a search warrant. Concluding that Stevenson lacked a reasonable expectation of privacy in the apartment, the district court denied the motion to suppress. Thereafter, Stevenson was convicted by a jury and sentenced by the district court.

Stevenson appeals his judgment of conviction, contending that the district court erred in denying his motion to suppress based on Sergeant Parks' violation of his Fourth Amendment rights.

II

At the outset, we address our standard of review on motions to suppress evidence.

Motions to suppress fall into the class of issues that are decided by the court and not the jury. *See* Fed. R. Crim. P. 12(b)(3)(C), 12(d); *see also* Fed. R. Evid. 104(a). In the course of deciding a motion to suppress, the district court may make findings of fact, as well as rulings of law, and the standard for our review is well-established: We defer to the district court's factual findings and do not set them aside unless clearly erroneous; and we review legal conclusions *de novo*. *See United States v. Ickes*, No. 03-4907, 2005 WL 14907, at *2 (4th Cir. Jan. 4, 2005); *United States v. Holmes*, 376 F.3d 270, 273 (4th Cir. 2004); *United States v. Kitchens*, 114 F.3d 29, 31 (4th Cir. 1997).

A factual finding is clearly erroneous when we are "left with the definite and firm conviction that a mistake has been committed." *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985) (internal quotation marks and citation omitted). But "[i]f the district court's account of the evidence is plausible in light of the record viewed in its entirety," we will not reverse the district court's finding simply because we have become convinced that we would have decided the fact differently. *Id.* at 573-74. Thus, when "there are two permissible views of the evidence, the [district court's] choice between them cannot be clearly erroneous." *Id.* at 574.

In this case, the district court received some testimony from witnesses, but it relied most heavily on the letter written by Stevenson to his girlfriend to make its factual finding that the letter "clearly indi-

cated" Stevenson's intention to relinquish his interest in the apartment. In making this finding, the court stated:

> [T]he court concludes that Stevenson lost any reasonable expectation of privacy in his apartment when, on his own volition, he wrote Blake to give her his property. That fact alone suggests that he had no intention of returning to his apartment, where the property was located. More importantly, however, Stevenson declared in the letter that he was the "former renter" of the apartment. The reasonable import of this statement is plain: Stevenson no longer considered himself a resident of the apartment. Indeed, his own words clearly indicate that he had no possessory interest in the apartment and that he was no longer obliged to pay rent in the future. Thus, any subjective expectation of privacy he may have had in the apartment was certainly not reasonable.
>
> . . . Stevenson asserts that it is "hyper-technical and unjustified" to conclude he abandoned his privacy interests in the apartment by referring to himself as the "former renter." To the contrary, the language which Stevenson used in his letter is the only direct evidence of his contemporaneous intent and knowledge. Moreover, the statement is particularly probative because it was completely voluntary.

Because we can read Stevenson's letter and draw inferences from it just as the district court did, Stevenson argues that we should review the district court's finding with respect to the letter *de novo*, and not for clear error. The assumption underlying this argument is that an appellate court reviewing documentary evidence can make a factual finding as well as a district court can, and, to the extent that an appellate court draws an inference inconsistent with a finding of the district court, the appellate court should follow its own finding. The argument, of course, recognizes that appellate courts defer to district court findings when they are based on credibility because credibility can *only* be determined by the district court, which is in a position to observe witnesses.

It is indeed true that only the trial court can observe "the variations in demeanor and tone of voice that bear so heavily on the listener's

understanding of and belief in what is said," which is important to the determination of whether a witness is to be believed. *Anderson*, 470 U.S. at 575. But any assertion that this is the governing principle for appellate court deference to a district court's factual findings is too limited and has been explicitly rejected by the Supreme Court. As that Court explained in *Anderson*,

> [t]he rationale for deference to the original finder of fact is not limited to the superiority of the trial judge's position to make determinations of credibility. The trial judge's major role is the determination of fact, and with experience in fulfilling that role comes expertise. Duplication of the trial judge's efforts in the court of appeals would very likely contribute only negligibly to the accuracy of fact determination at a huge cost in diversion of judicial resources. In addition, the parties to a case on appeal have already been forced to concentrate their energies and resources on persuading the trial judge that their account of the facts is the correct one; requiring them to persuade three more judges at the appellate level is requiring too much.

*Id.* at 574-75. It is well-established that even when findings of fact are not based on observations of credibility, but rather on undisputed evidence or on entirely documentary evidence, appellate courts must nonetheless defer to the trial court's factfinding function. *See id.* at 575; *United States v. Nat'l Ass'n of Real Estate Bds.*, 339 U.S. 485, 495 (1950) (deferring to the trial court's findings based on a *written* code of ethics and bylaws); *1616 Reminc Ltd. P'ship v. Commonwealth Land Title Ins. Co.*, 778 F.2d 183, 188-89 (4th Cir. 1985) (noting that findings of fact based on *documentary evidence* must be upheld if not clearly erroneous); *Nalle v. First Nat'l Bank of Balt.*, 412 F.2d 881, 884 (4th Cir. 1969) (noting that factual findings were reviewable for clear error "even though *documentary evidence* comprised much of the trustee's proof" (emphasis added)); *Bowman v. Curt G. Joa, Inc.*, 361 F.2d 706, 714 (4th Cir. 1966) (deferring through the clearly erroneous standard to the district court's resolution of *conflicting affidavits*); *Summers v. Watkins Motor Lines*, 323 F.2d 120, 123 (4th Cir. 1963) (noting that findings on a "*written record*" may not be set aside unless, "in the light of all the circumstances, they may be said to have been clearly erroneous" (emphasis

added)); *see also Lane v. United States*, 286 F.3d 723, 728 (4th Cir. 2002) (noting that the clearly erroneous standard "applies to factual inferences from undisputed basic facts" (internal quotation marks and citation omitted)).

There are several good reasons underlying the principle that an appellate court must defer to the trial court's factual findings even when they are not based on witness credibility. *First*, as a matter of court organization and assignment of judicial functions, factfinding is committed to trial courts, whereas review of those findings is committed to appellate courts. The trial court generally commits more time to individual cases and performs its factfinding function within the broad context of deciding motions and trying cases. If appellate courts were to begin the practice of making competitive findings with respect to undisputed or documentary evidence, they would usurp the trial function and create disorder by overruling factual findings that the public has come to expect are to be made by trial courts.

*Second*, because trial courts conduct the factfinding process repeatedly and routinely, they develop a facility — indeed an *expertise* — to which appellate courts should find it wise to defer. *See Anderson*, 470 U.S. at 574.

*Third*, if appellate courts were to undertake the responsibility of factfinding in circumstances where credibility was not an issue, judicial resources of an enormous magnitude would be diverted by the duplicative effort. Judicial efforts necessary for deciding cases would multiply, as would the efforts of lawyers who would have to repeat their arguments on factfinding, as well as on the errors assigned for review. *See Anderson*, 470 U.S. at 574-75.

Accordingly, we conclude that the district court's findings of fact in determining the import of Stevenson's January 21 letter to his girlfriend are subject to the deferential clearly erroneous standard of review. *See United States v. Jabara*, 644 F.2d 574, 577 (6th Cir. 1981) ("We hold that findings of fact in criminal cases are subject to the clearly erroneous standard of review *even when those findings are based solely on documentary evidence*. The 'clearly erroneous' test does not derive solely from the trial judge's superior opportunity to assess the credibility of witnesses; it also reflects and preserves the

proper relationship between trial courts and courts of appeal" (emphasis added)).

### III

In denying Stevenson's motion to suppress, the district court found as facts that, by the time of the search on January 24, 2003, Stevenson had "no intention of returning to his apartment" and "no longer considered himself a resident of the apartment." To make those findings, the district court relied heavily on its interpretation of the letter written by Stevenson, in which he gave his personal property at the apartment to his girlfriend and referred to himself as the "former renter" of the apartment.

Applying the clearly erroneous standard to these findings, we conclude that the district court did not clearly err. The district court's findings were both plausible and reasonable in light of the evidence, which showed that by January 24, 2003, (1) Stevenson had given away all of the property he had kept in the apartment; (2) he was in jail awaiting sentencing on a felony charge; (3) he was about five weeks behind in his rental payments to Floyd and had made no attempt to reach Floyd to work out an agreement; and (4) he had referred to himself as the "former renter" of the apartment.

The fact that Stevenson gave away all of the personal property he kept in the apartment strongly suggests that he did not intend to return to it. Although he could have intended to reside in an empty apartment or to buy new furniture before returning, the more plausible explanation reached by the district court was that Stevenson had no intention of returning to the apartment. This conclusion was buttressed by the facts that Stevenson was in jail awaiting sentencing on a felony conviction and that he could fairly assume that he would be serving a substantial prison term. The reasonableness of the district court's finding is further supported by the fact that Stevenson made no effort to contact Floyd after Stevenson's arrest to tell Floyd that he was planning on paying him the money owed in back rent.

Taking all of this evidence alone might have been sufficient under our deferential standard of review, but it certainly would not have compelled the finding that Stevenson had no intention of returning to

the apartment. After all, one could be in jail for a substantial amount of time, maintain an empty apartment on the outside, and intend to return to the apartment upon release. Similarly, the fact that Stevenson was behind in rent and did not show any ability to pay either back or future rent would not automatically preclude a finding that he intended to return to the apartment, given Floyd's past flexibility and willingness to work with Stevenson to get the rent paid. But these arguments are based on an unexpressed intent and are completely undermined by Stevenson's letter in which he referred to himself as the "former renter" of the apartment. That evidence shows explicitly that Stevenson did not intend to maintain the apartment while he served his jail time. To the contrary, it demonstrated his desire to terminate his lease.

Stevenson argues that the district court's reliance on his reference to himself as a "former renter" involves a "hyper-technical and unjustified" interpretation of the letter, which was written by someone not trained in the law. Even if this argument is a possible explanation for Stevenson's words, the district court did not act unreasonably or reach an implausible conclusion when it took Stevenson's words as written, and therefore its findings may not be reversed. *See Anderson*, 470 U.S. at 573-74.

Accordingly, we conclude that the district court's factual findings were not clearly erroneous.

## IV

Notwithstanding the district court's factual findings, Stevenson contends that as a matter of law he maintained a *reasonable* expectation of privacy in the 642 Court Street apartment at the time of the search, by virtue of the fact that he was still the apartment's lawful tenant. He notes that Floyd, his landlord, had not considered the overdue rent to be a reason to terminate the tenancy. To the contrary, Floyd had, in the past, been flexible about how and when Stevenson would make up past due rent. Further, Stevenson argues that his option to return to the apartment was curtailed by his arrest, and not by his intent: "Submission to an arrest cannot constitute the intentional abandonment of one's privacy interests in one's home." As an alternative position, he asserts that "it is reasonable to conclude that

[he] maintained a privacy interest to his apartment until his girlfriend emptied it of the personal property stored inside." At bottom, apart from his disagreement with the district court's factual findings, Stevenson claims that he "maintained a reasonable expectation of privacy in his apartment even after his arrest and continued incarceration" because he was still the tenant.

The government contends that given the district court's findings of fact, which were not clearly erroneous, it must be concluded that Stevenson abandoned any privacy interest he had in his apartment before the government searched it, and therefore he had no standing to contest the search and seizure in this case. It argues alternatively, that if Stevenson did have standing to challenge the search and seizure in this case, the case should be remanded to the district court to make findings of fact as to whether Sergeant Parks reasonably and objectively could have relied on the landlord's consent to search.

Having affirmed the district court's factual finding that Stevenson had no intention to return to the apartment, we still must turn to the question of whether that finding leads to the legal conclusion that any expectation of privacy that Stevenson claimed in the apartment at the time of the search was unreasonable. *See United States v. Ramapuram*, 632 F.2d 1149, 1155 (4th Cir. 1980).

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The Supreme Court has held that, with few exceptions, warrantless searches are "per se unreasonable" under the Fourth Amendment. *Katz v. United States*, 389 U.S. 347, 357 (1967). "At the very core of the Fourth Amendment stands the right of a man to retreat into his home and there be free from unreasonable governmental intrusion. With few exceptions, the question whether a warrantless search of a home is reasonable and hence constitutional must be answered no." *Kyllo v. United States*, 533 U.S. 27, 31 (2001) (internal quotation marks and citations omitted). And the protection of a house extends to apartments, rented rooms within a house, and hotel rooms so that a landlord may not give the police consent to a warrantless search of a rented apartment or room. *See Stoner v. California*, 376 U.S. 483, 490 (1964) (hotel room); *Chapman v. United States*, 365 U.S. 610, 616-17

(1961) (rented house). At bottom, the Fourth Amendment protects a "subjective expectation of privacy that society recognizes as reasonable." *Kyllo*, 533 U.S. at 33. But if society is unwilling to recognize the reasonableness of a subjective expectation, a search implicating the Fourth Amendment does not occur — "even when the explicitly protected location of a *house* is concerned." *Id.*

When a person voluntarily abandons his privacy interest in property, his subjective expectation of privacy becomes unreasonable, and he is precluded from seeking to suppress evidence seized from it. *United States v. Leshuk*, 65 F.3d 1105, 1111 (4th Cir. 1995); *see also Abel v. United States*, 362 U.S. 217, 241 (1960) ("There can be nothing unlawful in the Government's appropriation of . . . abandoned property"). "[T]he proper test for abandonment is not whether all formal property rights have been relinquished, but whether the complaining party retains a reasonable expectation of privacy in the [property] alleged to be abandoned." *United States v. Haynie*, 637 F.2d 227, 237 (4th Cir. 1980) (internal quotation marks and citation omitted). In making that determination, however, it is still relevant to consider a defendant's property interest. *See Rakas v. Illinois*, 439 U.S. 128, 143 n.12, 148 (1978).

In this case, we recognize that Stevenson had a reasonable expectation of privacy in his apartment before his arrest on January 20, 2003, and the only question presented is whether, given the subsequent circumstances manifesting his intention of not returning to the apartment, his expectation of privacy in the apartment after his arrest was reasonable as a matter of law.

In denying Stevenson's motion to suppress, the district court engaged in a two-step analysis. First, it found as facts, which we have found not clearly erroneous, that by the time of the search, Stevenson had "no intention of returning to his apartment" and "no longer considered himself a resident of the apartment." Second, the court concluded as a matter of law that Stevenson therefore "lost any *reasonable* expectation of privacy in his apartment." (Emphasis added). The court summarized, "[b]y relinquishing all rights to his personal property and all duties as a renter, Stevenson waived any *reasonable* expectation of privacy in his former apartment." (Emphasis added).

We agree with the district court's conclusion that, based on its factual findings and as a matter of law, any expectation of privacy that Stevenson held in the apartment at the time of the search was unreasonable. In determining whether an individual's expectation of privacy is reasonable, the Supreme Court has considered factors such as the purposes for which the individual uses the property and society's common understanding as to areas that deserve Fourth Amendment protection. *See Oliver v. United States*, 466 U.S. 170, 178 (1984). And, although an individual's expectation of privacy need not have been a recognized property right at common law, concepts from property law can serve to add legitimacy to an otherwise unreasonable expectation of privacy. *Rakas*, 439 U.S. at 143 n.12.

Each of the relevant factors convinces us that Stevenson failed to meet his burden of establishing that he had a reasonable expectation of privacy in his apartment when it was searched. *See id.*, at 132 n.1. *First*, the purpose for which Stevenson had been using his apartment — i.e., as a location for his personal property and a place to live — was frustrated after January 21, 2003, when he wrote his letter to Blake: He gave all of his personal property to Blake, expecting that she would take it as she saw fit, and he was not living in the apartment. Indeed, as found by the district court, Stevenson "no longer considered himself a resident of the apartment" and had no intention of living in it in the future.

*Second*, although society generally accepts as reasonable a person's privacy interest in his own apartment, that acceptance is based on the belief that an individual should be able to carry on activities and keep his belongings free from governmental inspection in the privacy of his home. When a person no longer carries on activities in the home because he has ceased to live there and no longer keeps his belongings at his home because he has given them away, society is less willing to accept as reasonable his expectation of privacy.

*Finally*, Stevenson's expectation of privacy gains no support from common law property concepts. At common law, "if . . . the tenant forfeits his lease or entirely abandons the premises, then the right to the possession reverts to the landlord and he may lawfully enter." *Chancey v. Smith*, 25 W. Va. 404, 407 (1885). Whether a tenant has abandoned the premises is primarily a question of intent, and courts

generally infer that the tenant intended to relinquish his property interest in the premises from the tenant's conduct and the surrounding circumstances, such as whether the tenant has paid rent, whether the tenant has communicated an intent to abandon, and whether the tenant has vacated the premises. *See tenBraak v. Waffle Shops*, 542 F.2d 919, 924 n.5 (4th Cir. 1976); *Chancey*, 25 W. Va. at 407. Of course, those are the very factors that are present in this case and that would suggest to a common law court that Stevenson had abandoned his leasehold interest in the apartment, entitling his landlord to enter it.

In short, when someone no longer lives in his apartment, expresses an intention of not returning to his apartment, gives away all of his personal property in the apartment, and abandons his leasehold interest in the apartment, his subjective expectation of privacy in that apartment is not reasonable as a matter of law.

Stevenson argues that we should follow the Sixth Circuit's decision in *United States v. Robinson*, 430 F.2d 1141 (6th Cir. 1970), where the court held that facts similar to those in this case were insufficient to support a finding of abandonment. In *Robinson*, the government defended a warrantless search of an apartment rented by the defendant based on evidence that (1) the defendant had been absent from the apartment without paying rent for over a month, and (2) a friend of the defendant and the defendant's wife had removed some of the defendant's belongings from the apartment prior to the search. *See id.* at 1143-44. Noting that the defendant had been incarcerated during the month in which he was absent, the Sixth Circuit rejected the government's position and held that the evidence failed to prove that the defendant intended to give up his interest in the apartment and therefore that the defendant retained a legitimate expectation of privacy in it. *See id.* at 1143.

The record in *Robinson*, however, did not include evidence presented in this case in the form of Stevenson's letter, which enabled the district court to reach the factual conclusion that the *Robinson* court was unable to reach: that Stevenson had no intention of returning to the apartment. Indeed, the Sixth Circuit relied expressly on the absence of evidence of intent to conclude that the defendant there had not abandoned his expectation of privacy in the apartment.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED.*