PUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 12-4639

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

STEVEN LARUE ROBINSON,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern
District of North Carolina, at Raleigh.  Louise W. Flanagan,
District Judge.  (5:11-cr-00131-FL-1)

Argued:  October 29, 2013          Decided:  February 21, 2014

Before NIEMEYER, MOTZ, and DIAZ, Circuit Judges.

Affirmed by published opinion.  Judge Motz wrote the opinion, in
which Judge Niemeyer joined.  Judge Diaz wrote a separate
opinion dissenting in part.

**ARGUED**: Seth Allen Neyhart, STARK LAW GROUP, PLLC, Chapel Hill,
North Carolina, for Appellant.  Joshua L. Rogers, OFFICE OF THE
UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.
**ON BRIEF**: Thomas G. Walker, United States Attorney, Jennifer P.
May-Parker, Assistant United States Attorney, OFFICE OF THE
UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

DIANA GRIBBON MOTZ, Circuit Judge:

Steven Robinson challenges his 140-month sentence for cocaine distribution, contending that the district court erred in assigning his drug quantity and in calculating his criminal history. For the reasons that follow, we affirm.

I.

A.

In 2010, police officers in Wilson, North Carolina, videotaped Robinson and two others making six crack-cocaine sales to a police informant. The Government indicted Robinson on one count of conspiring to distribute crack cocaine from 2002 to 2011, one count of aiding and abetting the distribution of crack cocaine, and six counts of distribution of crack cocaine. Robinson pled guilty to three of these counts in February 2012, but sought to proceed to trial on the remaining five counts. His two co-conspirators pled guilty the week before Robinson's scheduled trial. In light of these guilty pleas, Robinson himself pled guilty to the remaining five counts on April 30, 2012, the day on which his trial had been scheduled.

B.

A presentence investigation report (PSR) drafted by a probation officer calculated Robinson's base offense level in light of the quantity of crack cocaine attributable to him.

2

Although the counts to which Robinson pled guilty specify only that the crime involved "50 grams or more" of crack cocaine, the Sentencing Guidelines require judges to consider all drug sales made by the defendant during the conspiracy -- including drug sales not covered by the counts of conviction. U.S.S.G. § 2D1.1 cmt.5.

In Robinson's case, the probation officer concluded that, between 2002 and 2011, Robinson sold far more crack cocaine than was implicated by the six sales the police captured on tape. In arriving at this conclusion, the probation officer relied on statements made to the police by Melvin Battle, who claimed to have purchased drugs from Robinson regularly from 2000 through 2008. Taking the low end of Battle's estimates, the probation officer estimated that Robinson sold Battle 1.43 kilograms of crack cocaine. This estimate, combined with the drug quantity covered by the counts of conviction, translated to a drug quantity calculation of 1.47 kilograms of crack cocaine, which produced a base offense level of 34. From this base offense level, the probation officer recommended a 3-level reduction for acceptance of responsibility, resulting in a recommended offense level of 31.

The PSR also contained a calculation of Robinson's criminal history category. The probation officer assigned Robinson one criminal history point based on a 2003 conviction for marijuana

possession, and another point based on a 2009 conviction for resisting arrest and carrying a concealed weapon. The probation officer added two more points under Section 4A1.1(d) of the Sentencing Guidelines, which provides for an enhancement if the defendant committed the crime of conviction while on probation. The probation officer reasoned that Robinson had been given a one-day sentence of probation because of his 2003 marijuana conviction, and that this term coincided with the ongoing drug conspiracy. These four criminal history points produced a criminal history category of III.

Based on a criminal history category of III and an offense level of 31, the recommended Guidelines range in the PSR totaled 135-168 months imprisonment.

C.

At sentencing, Robinson objected both to the calculation of drug quantity and the calculation of criminal history.

i.

Robinson's challenge to his drug quantity rested on the PSR's reliance on the statement provided by Melvin Battle. Given the opportunity to address the court directly, Robinson pointed out that, before attributing 1.43 kilograms of crack to Robinson, Battle had in an earlier interview stated that Robinson sold him 6 kilograms of the drug. Robinson also argued that Battle's claim to have bought PCP cigarettes from Robinson

4

in North Carolina from 2005 to 2008 was false because Robinson was enrolled in culinary school in Florida during most of that period. Contending that he never sold drugs to Battle, Robinson insisted that Battle was "blatantly lying" to curry favor with prosecutors.

In response, the Government conceded that Battle revised his statement to render his second drug-quantity estimate significantly lower than his first. But the Government argued that "it is not unusual for Defendants to estimate differently" when interviewed on two separate occasions. According to the Government, Battle's second statement merely provided a more conservative and reliable estimate than the first. With respect to the PCP cigarettes Battle claimed to have bought when Robinson was in Florida, the Government emphasized that these sales did not figure into the PSR drug-quantity assignment.

The Government further defended the drug-quantity calculation by explaining that, notwithstanding the asserted deficiencies in Battle's statement, three other witnesses were prepared to state that Robinson sold them drugs during the conspiracy timeframe. Although these statements did not "make their way" to the probation office, the Government maintained that these accounts would put Robinson "in at least the position he's in with Mr. Battle's statement, if not in a worse position."

5

Upon consideration of the parties' arguments, the district court presented Robinson with a choice:

> We'll do it one of two ways. We're going to go forward today with what's here and now, and I'll make the decisions that I need to make by a preponderance of the evidence. Or I'll unwind the whole thing. I'll start the PSR process all over. If there are statements that didn't, for whatever reason, make it to the Probation Office, [I'll] start again. And, whatever happens, happens. And then, you'll have a chance to object. . . . That's the only way I see -- those are the only two choices.

Robinson responded by reiterating that Battle's statement was not credible. But, after the court again asked him whether he would prefer to proceed on the basis of Battle's statement or delay sentencing for three months to allow the parties ample time to obtain more information, Robinson responded that "I would rather go ahead and do it now, Your Honor."

The Government further explained the basis of the drug quantity calculation set forth in the PSR and why this calculation would have been higher if the PSR had included statements of other witnesses. Robinson then addressed the court, contending that he "wasn't an everyday drug dealer" and that any witnesses saying to the contrary were lying. After the court reviewed the counts to which Robinson pled guilty, it concluded that, with respect to the relevant conduct informing his drug quantity calculation, Robinson "really ha[d] gotten a break [because of] the way the Probation Office calculated the

6

amount of crack cocaine." The court stated that it "had heard enough to conclude that the calculations in the [PSR were] credible and reliable," and that they could be used in calculating Robinson's offense level, but it again reiterated that it was willing to "open this all back up" if Robinson were so inclined. Robinson did not take the court up on its offer.

## ii.

Robinson also objected to the PSR's assignment of two criminal history points on the basis of his sentence of one day probation for the 2003 marijuana conviction. He argued that he had spent the entire day of probation en route from the Maryland courthouse, and so could not have sold drugs on that day. The court rejected this argument and imposed a two-point adjustment, concluding that the Sentencing Guidelines required this result. This adjustment increased Robinson's guidelines range from 121-151 months to 135-168 months. The court sentenced Robinson to 140 months imprisonment -- a sentence the court noted was "well within" both ranges.

Robinson appeals, asserting that the district court procedurally erred in calculating his drug quantity and criminal history.[1]

---

[1] Robinson's alternative argument that his military service, mental health issues, and work history render his within-Guidelines sentence substantively unreasonable is meritless.

7

II.

With respect to drug quantity, Robinson contends that the district court committed plain error by relying on Battle's statement in the PSR. Robinson, however, has waived this contention. When he made the conscious choice at sentencing to proceed on the basis of the information contained in the PSR, including Battle's statement, Robinson waived his right to appeal the district court's reliance on that information.

A "waiver is the intentional relinquishment or abandonment of a known right." Wood v. Milyard, 132 S. Ct. 1826, 1835 (2012) (quotation marks omitted). Waiver is to be distinguished from "forfeiture," which is "the failure to make the timely assertion of a right." Kontrick v. Ryan, 540 U.S. 443, 458, n.13 (2004). Courts may review a forfeited claim for plain error. United States v. Olano, 507 U.S. 725, 731 (1993).[2] But when a claim is waived, it is not reviewable on appeal, even for plain error. Id. Rather, a valid waiver means that there was "no error at all." United States v. Keeter, 130 F.3d 297, 300 (7th Cir. 1997). The case at hand is one of waiver, not forfeiture. "A party who identifies an issue, and then

---

[2] Under plain error review, the challenging party must show that (1) there was an "error" (2) the error was "plain", (3) the error "affect[s] substantial rights," and (4) the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." Olano, 507 U.S. at 732).

8

explicitly withdraws it, has waived the issue." United States v. Rodriguez, 311 F.3d 435, 437 (1st Cir. 2002).

Here, Robinson raised an objection to his drug-quantity calculation by challenging the credibility and reliability of the testimony on which the PSR relied. The Government countered this objection by stating that other witnesses were available to corroborate (or augment) the drug-quantity calculation. The district court could have unilaterally chosen to grant a continuance. See United States v. Johnson, 732 F.2d 379, 381 (4th Cir. 1984). But, perhaps because doing so might have led to Robinson receiving a higher sentence, the court instead provided Robinson with a choice: (1) postponement of sentencing to allow the parties to produce new evidence as to the proper drug quantity, or (2) proceeding to sentencing based on the evidence before the court.

When presented with this choice, Robinson unequivocally stated that he "would rather go ahead and do it now." Furthermore, he adhered to this position when the district court gave him an opportunity to change his mind. Thus, Robinson consciously abandoned his objection to the drug quantity calculation in the PSR and instead opted to proceed to sentencing based on the information in the PSR. This was waiver.

Whether the waiver was valid is a matter of law that we review de novo. United States v. Marin, 961 F.2d 493, 496 (4th Cir. 1992). Criminal defendants may waive statutory or constitutional rights -- including the right to challenge a particular ruling on appeal -- if the waiver is knowing and voluntary. Id. Examination of the totality of the circumstances determines whether a waiver is knowing and voluntary. United States v. Farrell, 393 F.3d 498, 500 (4th Cir. 2005).

In this case, the record reveals that the defendant, Robinson, knew exactly what he was relinquishing. The district court explicitly and repeatedly explained that, by choosing to proceed with sentencing, Robinson was agreeing that his drug quantity would be calculated on the basis of the PSR, which relied on Battle's statement. On three separate occasions, the court presented Robinson with the choice of postponing sentencing to supplement the record or proceeding with sentencing based on the information in the PSR. Robinson consistently adhered to his preference to proceed with sentencing without supplementing the record.

Nothing in the record suggests that Robinson -- who had graduated from high school, attended community college, and attained an associate degree in culinary arts -- did not understand this choice. Indeed Robinson does not even contend

10

that he did not understand this choice. Thus, his waiver was knowing and voluntary.[3]

Robinson's decision to proceed on the basis of the existing PSR is akin to a defendant's decision to proceed with a bench trial rather than a jury trial -- quintessentially an enforceable waiver. See United States v. Boynes, 515 F.3d 284, 287 (4th Cir. 2008). Having made a choice at sentencing, Robinson cannot now contend that the district court erred by honoring that choice. He has waived the argument.[4]

---

[3] The dissent asserts that "the district court did not make a finding on the reliability of Battle's statements until after it presented Robinson with his choice," and that Robinson "rel[ied] on the court's representation that it would apply the evidentiary standard" when he chose to proceed. The dissent thus concludes that Robinson waived at most "the opportunity for a 90-day delay." This argument, which Robinson himself has never made, fails. First, it fails to consider the record in its entirety. In the very same four-sentence paragraph in which the court made its reliability finding, it again reiterated its willingness to "open this all back up." Given Robinson's extensive argument on his own behalf (including his not infrequent interruptions of the district court), he surely would not have hesitated to withdraw his waiver if he wished to, but he did not. Moreover, the dissent's proposed holding would permit Robinson to impeach (by unsworn argument) Battle's statement, while at the same time preventing admission of new evidence to supplement the record. In short, the dissent would permit Robinson to have his cake and eat it too. Moreover, the dissent's approach would counsel sentencing courts to act unilaterally without offering defendants a choice, and would thus undermine the very interests the dissent aims to protect.

[4] The Government's contention that Robinson "invited" error by the district court thus misses the mark. Robinson did not "ask[]" the court to rely on Battle's statement and then complain on appeal that this reliance was improper. See United
(Continued)

11

We note that this conclusion accords with the holdings of the Supreme Court and our sister circuits in similar circumstances. See Wood, 132 S. Ct. at 1835 (holding that the State waived a defense where, "after expressing its clear and accurate understanding" of the defense, the State "deliberately steered the district court away" from it); United States v. Guzman, 707 F.3d 938, 941, n.2 (8th Cir. 2013) (holding that defendant waived claim that Government breached plea agreement at sentencing by withdrawing pro se motion to withdraw guilty plea prior to sentencing); Rodriguez, 311 F.3d at 437 (holding that defendant "consciously waived" his objection to information in the PSR by raising, and then withdrawing, the objection prior to sentencing); Keeter, 130 F.3d at 300 (holding that defendant waived an objection by rejecting the court's offer to postpone a sentencing hearing and opting instead to proceed without delay).[5]

States v. Herrera, 23 F.3d 74, 75 (4th Cir. 1994).  Rather, after initially objecting to the use of Battle's statement, Robinson expressly waived any objection to it.  Accordingly, rather than committing "invited error," the district court committed "no error at all."  Keeter, 130 F.3d at 300.

[5] Although not determinative here, given Robinson's waiver, we note that he mistakenly asserts that United States v. Solomon, 274 F.3d 825 (4th Cir. 2001) establishes that when a defendant disputes the drug quantity calculations in the PSR, the PSR provides "no evidentiary basis" for that calculation. Appellant's Br. at 13.  Solomon does not so hold.  Solomon merely holds that a probation officer's calculation in a PSR "standing alone" (that is, without the identification of (Continued)

12

III.

Robinson also asserts that the district court committed two errors in calculating his criminal history.

A.

He first contends that the court erred in treating his 2003 marijuana conviction as yielding a "prior sentence" rather than as "relevant conduct" with respect to his current sentence. Whether a crime constitutes "relevant conduct" under the Guidelines is a factual question we review for clear error. United States v. Hodge, 354 F.3d 305, 313 (4th Cir. 2004). If the district court's finding "is plausible in light of the record viewed in its entirety," we will not reverse it simply because "we would have decided the fact differently." United States v. Stevenson, 396 F.3d 538, 542 (4th Cir. 2005) (citation and quotation marks omitted).

In calculating a defendant's offense level, a sentencing court must consider all "relevant conduct" surrounding the offense. U.S.S.G. § 1B1.3. Relevant conduct encompasses acts "that occurred during the commission of the offense of conviction [or] in preparation for that offense," including conduct resulting in a separate criminal conviction. Id.

---

supporting evidence of any kind) "does not constitute a finding of fact" on which a sentencing court can rely. Id. at 828, n.3.

13

§ 1B1.3(a)(1).  The Guidelines include as relevant conduct "all quantities of contraband" the defendant sold during a conspiracy.  Id. § 1B1.3(a)(1) cmt.2(b).

In addition to establishing the defendant's offense level in light of all relevant conduct, a sentencing court must separately calculate the defendant's criminal history score based in part on his "prior sentence[s]."  Id. § 4A1.1.  The Guidelines exclude from the definition of "prior sentences" any sentence resulting from conduct that constitutes "relevant conduct" to the current offense.  Id. § 4A1.2 cmt.1.  Thus, if an offense qualifies as relevant conduct for offense-level purposes, it cannot also yield a prior sentence for criminal-history purposes.

Robinson pled guilty to conspiring to sell cocaine from 2002 to 2011.  He had previously been found guilty of and sentenced for marijuana possession in 2003.  He contends that the 2003 marijuana conviction and sentence constituted "relevant conduct" to his drug conspiracy rather than yielding a "prior sentence."  He therefore objects to the inclusion of the marijuana sentence in his criminal history score.[6]

---

[6] Although he did not make this precise argument before the district court, Robinson did challenge his criminal history score, and thus preserved his claim.  See Yee v. City of Escondido, 503 U.S. 519, 534 (1992) ("Once a federal claim is properly presented, a party can make any argument in support of (Continued)

14

The district court did not clearly err by treating Robinson's 2003 marijuana sentence as a prior sentence rather than relevant conduct. The 2003 sentence was for marijuana possession, while the ongoing conspiracy involved the crack cocaine distribution -- suggesting two distinct crimes. Moreover, the 2003 sentence was for simple possession rather than distribution -- suggesting that the marijuana was for personal use and played no role in a drug-dealing conspiracy. The fact that an unrelated drug conviction and sentence occur during the timeframe of a drug conspiracy does not automatically convert them into relevant conduct of the conspiracy. See U.S.S.G § 4A1.2 cmt.1 ("A sentence imposed after the defendant's commencement of the instant offense, but prior to sentencing on the instant offense, is a prior sentence if it was for conduct other than conduct that was part of the instant offense." (emphasis added)). The district court's finding is thus "plausible in light of the record viewed in its entirety" and is entitled to our deference. Stevenson, 396 F.3d at 542.

## B.

Robinson also contends that the district court erred by adding two points to his criminal history score because he

_____

that claim; parties are not limited to the precise arguments they made below.").

15

participated in the drug conspiracy while on probation. We review de novo a trial court's legal interpretation of the Guidelines. United States v. Wessells, 936 F.2d 165, 168 (4th Cir. 1991).

The Sentencing Guidelines require a two-point upward adjustment "if the defendant committed the instant offense while under any criminal justice sentence, including probation [or] parole." U.S.S.G. § 4A1.1(d). An application note to this provision clarifies that a two-point adjustment is warranted if the defendant committed "any part of the instant offense" while on probation. Id. § 4A1.1 cmt.4. Under the plain language of this provision, an enhancement must be imposed if any part of the defendant's crime coincides with a term of probation. See United States v. Hernandez, 541 F.3d 422, 424 (1st Cir. 2008) (affirming a two-point adjustment where the defendant was sentenced to probation midway through a heroin-delivery conspiracy even though he never actually delivered heroin during the probation term). If a sentencing court concludes that a two-point adjustment is too harsh given the minor nature of the offense giving rise to probation, the proper course is to apply the enhancement and then depart downward. United States v. Kimberlin, 18 F.3d 1156, 1160-61 (4th Cir. 1994).

Robinson argues that he was in transit on the day of his probation in 2003 and that he could not have sold crack cocaine

16

on that day. But even assuming Robinson did not sell cocaine during his 24 hours of probation, the two-point adjustment was proper. Given the plain language of the Guidelines, even a short period of probation imposed during an ongoing conspiracy triggers an enhancement under § 4A1.1(d). Robinson's "instant offense" was a drug-dealing conspiracy that spanned from 2002 to 2011. Because this timeframe included Robinson's day of probation in 2003, the enhancement was proper. We note further that the district court, conscious of the minor nature of the marijuana offense, imposed a sentence that was "well within" both the Guidelines range including and the Guidelines range excluding this two-point adjustment.

IV.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

17

DIAZ, Circuit Judge, dissenting in part:

I agree with my colleagues that Robinson freely chose to proceed with his sentencing hearing. But because we part ways as to what, precisely, that choice entailed, I respectfully dissent from Part II of the majority opinion.

I.

The majority apparently believes that Robinson's "waiver" encompassed his right to challenge the sufficiency of the evidence supporting the drug weight for which he was held accountable. I cannot agree with this overly broad reading.

Before the district court, Robinson objected vigorously to the PSR's drug weight calculation, focusing particularly on Battle's credibility. See J.A. 119, 121, 123–126, 132, 135–36, 141–43, 152. After the court expressed concern about Battle's statements, the government explained that it could call additional witnesses who would prove an even higher drug weight. But neither Battle nor those additional witnesses were available to testify that day. The court presented Robinson with two options[1]:

> We'll do it one of two ways. We're going to go
> forward today with what's here and now, and I'll make

---

[1] At this point, Robinson was speaking for himself, rather than through counsel. The district court continued to address Robinson directly for the remainder of the hearing.

18

the decisions that I need to make <u>by a preponderance of the evidence</u>. Or I'll unwind the whole thing. I'll start the PSR process all over. If there are statements that didn't for whatever reason, make it to the Probation Office, start again. And, whatever happens, happens. And then, you'll have a chance to object. And then I'll, you know, in three months time, see you. And we'll see what the Pre-Sentence Report looks like, and I'll make the decisions that I need to make. That's the only way that I see -- those are the only two choices.

J.A. 131–32 (emphasis added). After Robinson intimated his concern for the court's resources, the choice was presented again: "I'll consider all of the information that either side wishes to present to me now, or we'll start all over and I'll take the case up in 90 days." J.A. 133.

It is true that Robinson chose to "go ahead and do it now." J.A. 133. My colleagues say that "[t]he district court explicitly and repeatedly explained that, by choosing to proceed with sentencing, Robinson was agreeing that his drug quantity would be calculated on the basis of the PSR, which relied on Battle's statement." Maj. Op. at 10. But this is only part of the story. The district court also "explicitly . . . explained" that the court would consider the evidence before it and apply the appropriate evidentiary burden. Indeed, the district court did not make a finding on the reliability of Battle's statements until <u>after</u> it presented Robinson with his choice. Compare J.A. 131–32, <u>with</u> J.A. 143-44.

To be quite clear: the district court gave Robinson a choice of proceeding with the appropriate evidentiary standard or starting the process over. Robinson continued to object to Battle's credibility and noted that he did not "want to keep causing The Court [sic] more time and money." J.A. 133. The district court reiterated the two options. And Robinson elected to "go ahead and do it now." J.A. 133.

Later, after the court had proceeded with the sentencing hearing and heard further argument about the drug weight calculation, the district court seemed satisfied that it had heard enough. In the midst of a fairly lengthy discourse, the court stated, "[I]f you're inclined to want to open this all back up, I will open it all back up. But I think I have heard enough to know that the calculations in the [PSR] are credible and reliable, and that I may rely on those in determining the advice of the Guidelines." J.A. 143–44. The court then went on for two more paragraphs, assigning Robinson's base offense level and moving on to mitigating circumstances.

The majority opines that "[w]hen presented with [his] choice, Robinson unequivocally stated" his desire to proceed. Maj. Op. at 9–10. As I understand it, this "unequivocal statement," rather than Robinson's later silence in response to a non-question, is what the majority believes to constitute waiver. Indeed, the majority explicitly notes that when the

20

district court made its finding on reliability, Robinson "would not have hesitated to withdraw his waiver if he wished to." Maj. Op. at 11 n.3. Thus, the "waiver" the majority touts did in fact precede any findings on credibility. It is difficult to understand how the scope of that affirmative "waiver"--a waiver relying on the court's representation that it would apply the evidentiary standard--would change simply because Robinson did not immediately object to a finding made much later in the hearing. On this record, I cannot agree that Robinson waived his right to contest the sufficiency of the district court's finding as to drug weight--a finding that had yet to occur when he chose to proceed.[2] If he waived anything at all, it was the opportunity for a 90-day delay.

---

[2] The cases on which the majority relies are inapposite. In United States v. Keeter, for example, the defendant explicitly chose to proceed with sentencing with his current attorney; he argued on appeal that he should not have been represented by an unprepared lawyer. See 130 F.3d 297, 300 (7th Cir. 1997). Thus, unlike the court today, the Seventh Circuit held Keeter to a choice he actually made. The other cases cited by the majority similarly fail to apply here, as Robinson forcefully contested Battle's credibility. Cf. Wood v. Milyard, 132 S. Ct. 1826, 1835 (2012) (finding waiver where the state "deliberately steered" the court away from the pertinent question); United States v. Guzman, 707 F.3d 938, 941 n.2 (8th Cir. 2013) (finding waiver where defendant withdrew his motion and also signed a consent form admitting his acceptance of the purpose and effect of that withdrawal); United States v. Rodriguez, 311 F.3d 435, 437 (1st Cir. 2002) ("[H]e then deliberately withdrew his objection.").

Because Robinson did not waive his objection to the sufficiency of the evidence, the district court remained duty-bound to apply the appropriate standard. "[T]he government bears the burden of proving by a preponderance of the evidence that quantity of drugs for which a defendant should be held accountable at sentencing . . . ." United States v. Milam, 443 F.3d 382, 386 (4th Cir. 2006). The paltry evidence the government offered cannot suffice.

Battle's "evidence" is a sorry mess. In a 2010 statement, Battle accused Robinson of providing six kilograms of cocaine base; in 2012, less than two kilograms. See J.A. 124–25, 176. The government conceded that the statements differed "significantly," J.A. 139, yet somehow contends that they are "not inconsistent," J.A. 128. Of greater concern is Battle's statement that he regularly purchased PCP cigarettes from Robinson in North Carolina between 2005 and 2008. This defies common sense: as the PSR explains, Robinson lived in Florida for much of that time. J.A. 181–82. The district court excused this discrepancy, noting that those PCP cigarettes were not included in the drug weight calculation.

But such a rationale sidesteps the real issue: by lying about the PCP cigarettes, Battle has shown himself unworthy of belief. And because the government declined to put either

22

Battle or the probation officer who interviewed him on the stand, the court had no opportunity to assess his credibility in any other light.[3] Simply put, what little the government presented to support the drug weight calculation cannot constitute a preponderance of the evidence.

The government's proffer of other witnesses--witnesses never presented to the probation officer, much less the court--hardly redresses the lack of evidence. "Testifying about facts is the function of the witness, not of the lawyer." Kalina v. Fletcher, 522 U.S. 118, 130 (1997); see also Int'l Woodworkers v. Chesapeake Bay Plywood Corp., 659 F.2d 1259, 1273 (4th Cir. 1981) ("The roles of witness and advocate are fundamentally inconsistent . . . ."). A prosecutor's mere proffer of evidence provides "no evidence from the sentencing hearings . . . to review." United States v. Lawrence, 47 F.3d 1559, 1568 (11th Cir. 1995). Thus, these extraneous statements cannot help the government surmount its burden.

I am mindful that factual determinations of credibility generally remain the province of the district court. But "[i]t is the opportunity to hear the witness testify and observe his manner and demeanor on the stand which places the district court

---

[3] The district court commented that Robinson "could have called [Battle] to the stand, at this hearing." J.A. 132. But such a statement misconstrues the burden, which properly belonged to the government.

23

in a better position to judge credibility than that of an appellate court which must rely on a cold paper record." Phillips v. Crown Cent. Petroleum Corp., 602 F.2d 616, 636 (4th Cir. 1979) (Widener, J., concurring and dissenting). Here, the district court itself relied on a cold paper record--one riddled with contradictions. Such dubious findings are not "so sacrosanct as to evade review." Jiminez v. Mary Washington Coll., 57 F.3d 369, 379 (4th Cir. 1995).


                              III.

     The majority declares that Robinson made a considered decision and should have to live with the consequences. But that rationale upends the equities--and, indeed, facts--of the case before us. It is not Robinson who seeks a mulligan, but the government.

     When Robinson objected to the PSR--before the hearing--the government was put on notice that its "evidence" was suspect. Yet it did not produce Battle. Nor did it produce the probation officer who interviewed Battle. And it had never even submitted the other witnesses' statements to the probation officer in the first place. Despite its lack of preparation, the government was presented--as the majority sees it--with a win-win scenario: either it would have a second chance to do the job right (securing an even longer sentence), or it would get a pass on

                               24

the evidentiary standard. "In this case, the district court did not ensure--as it was obligated to--that the Government carried its burden of proof." Lawrence, 47 F.3d at 1568.

Thus, I would vacate and remand with instructions that the district court resentence Robinson on the record--but without crediting Battle's statements as to drug weight. Any other result would grant the government the very benefit--a second chance to present evidence--that it does not merit. See, e.g., United States v. Archer, 671 F.3d 149, 168 (2d Cir. 2011) ("The consensus among our sister circuits is that generally where the government knew of its obligation to present evidence and failed to do so, it may not enter new evidence on remand."); United States v. Otey, 259 F. App'x 901, 903 (8th Cir. 2008) ("[T]he Government had sufficient notice of Otey's factual objection to the loss amount that it should not be afforded a second opportunity to present additional evidence on this issue.").

The majority prefers to hold Robinson to a bargain he never made. For this reason, I respectfully dissent from Part II of the majority opinion.