**Kathy BONDS, Plaintiff–Appellant,**

v.

**C.W. COX; H.J. Harris; and D.R. Aldridge, Defendants–Appellees.**

No. 92–6644.

United States Court of Appeals, Sixth Circuit.

Submitted Oct. 7, 1993.

Decided April 6, 1994.

Jim D. Waide (briefed), Tupelo, MS, Terese. B. Deboo, Memphis, TN, for plaintiff-appellant.

Debra L. Fessenden (briefed), Thomas Edwards Hansom (briefed), Memphis, TN, for defendants-appellees.

Before: MARTIN and BOGGS, Circuit Judges; and JOINER, Senior District Judge.*

BOYCE F. MARTIN, JR., Circuit Judge.

Kathy Bonds appeals the district court's grant of summary judgment for defendant police officers in this action, brought pursuant to 42 U.S.C. § 1983, for violations of rights protected by the Fourth and Fourteenth Amendments to the United States Constitution. The district court found that Bonds did not have standing to assert these constitutional violations because she lacked a reasonable expectation of privacy in premises searched pursuant to a warrant. Although we agree that Bonds lacks standing on this ground, we believe that she has standing to challenge the manner in which the search was conducted because her property was seized within the meaning of the Fourth Amendment. For the following reasons, we reverse the judgment of the district court.

On February 6, 1991, police officers executed a search warrant at 4174 Dunn Avenue in Memphis, Tennessee. The warrant, in addition to identifying the premises to be searched, also described a white male, five feet six inches tall, weighing two hundred and thirty pounds, with a dark beard. This individual and a white female were identified as being suspected of possessing marijuana. Upon executing the warrant, the police discovered a marijuana pipe and other drug paraphernalia.

Bonds is the owner of the property at 4174 Dunn Avenue. According to the first of her two affidavits, however, she has not lived there since July 1990, when she began staying at her son's house in Horn Lake, Mississippi. Bonds stated that her house at 4174

---

* The Honorable Charles W. Joiner, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

Dunn Avenue was completely unoccupied from July 1990 through February 6, 1991, and that she granted permission only to her son and his fiancee to enter the premises during that time. Bonds further stated in her initial affidavit that she had "never seen any such person" meeting the description of the man identified in the search warrant, and that such a person had never been at her home.

Bonds filed this action on February 4, 1992, alleging that the defendant police officers did more than $20,000 worth of damage to her house due to gross negligence in executing the warrant. She also asserted that the officers knowingly relied on false information in securing the warrant. The defendants moved for summary judgment on two grounds: (1) qualified immunity; and (2) failure to state a Section 1983 claim, because the search warrant was legally sufficient and Bonds failed to show more than ordinary negligence in the performance of the officers' duties. In their reply to Bonds' subsequent memorandum in opposition to summary judgment, the defendants raised a standing issue in a single sentence: "It would appear that Mr. Basham, and not the plaintiff, would be the person with standing to bring this action." Along with their reply memorandum, the defendants submitted affidavits containing the following uncontroverted facts: (1) on May 31, 1989, the utilities at 4174 Dunn Avenue were turned on in the name of Irey Basham, Jr.; (2) the subsequent utility usage at 4174 Dunn Avenue was consistent with that of an occupied residence until at least March 1992; (3) Basham's driver's license, issued on June 20, 1989, listed 4174 Dunn Avenue as his residence as of April 1992; and (4) Basham's license shows that he is a white male, five feet six inches tall, with a dark beard and blue eyes.

The district court found that the treatment of the standing issue in defendants' reply memorandum was sufficient to put Bonds on notice that the issue was contested, and observed that Bonds failed to adduce any evidence to rebut the government's standing argument for more than five months after the filing of the memorandum. The district court therefore granted summary judgment for the defendants on the ground that Bonds lacked standing.

Shortly thereafter, Bonds filed a motion to alter or amend judgment under Federal Rule of Civil Procedure 59(e). In this motion, Bonds contended that the standing issue was not properly raised before the court and, in the alternative, that she did have standing to raise her claims. Bonds supplied two additional affidavits to the court, from her and Irey Basham, in support of her motion. These affidavits stated that Bonds considered Irey Basham to be almost her child, that Bonds had the utilities at 4174 Dunn Avenue turned on in Basham's name, that Basham had not lived at 4174 Dunn Avenue since 1989, and that the utility usage remained consistent with that of an occupied house because Bonds left the lights, air conditioning, television, and water on for "occasional" use and to deter burglars. The district court denied Bonds' motion to alter or amend judgment, and Bonds filed this timely appeal.

Bonds argues that the district court erred in granting summary judgment for the defendants because: (1) she did not have proper notice of the standing issue; (2) she had standing based upon her reasonable expectation of privacy in the premises; (3) she had standing based on the unreasonable execution of the search warrant; and (4) she adduced evidence which created a genuine issue of material fact as to her standing.

■ First, we address whether Bonds had proper notice of the standing issue. As the district court observed, defendants raised this issue in their reply to Bonds' memorandum in opposition to summary judgment. Under Federal Rule of Civil Procedure 56(c), the court was authorized to consider "all pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits" in order to determine whether summary judgment was appropriate. Therefore, the standing issue was properly before the district court. We also note that Bonds had ample time to file supporting evidence on this issue after defendants submitted their affidavits and before the district court's grant of summary judgment. Accordingly, we believe that Bonds had proper notice that

the question of her standing was to be litigated.

We now turn to the merits of the court's decision to grant summary judgment. Summary judgment is appropriate if "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party[.]" *Matsushita Electronic Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e). In determining whether there is a genuine issue for trial, we must draw all reasonable inferences from the facts in the light most favorable to Bonds, as the nonmoving party. *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356. For these purposes we consider only the pleadings, the evidence submitted by the defendant, and the first affidavit submitted by Bonds, as Bonds' subsequent affidavits were not tendered to the court until her Rule 59(e) motion was filed.

In granting summary judgment on the ground that Bonds had no standing because she lacked a reasonable expectation of privacy in the house, the district court correctly observed that Bonds did not submit any rebuttal evidence to contradict the affidavits and physical evidence supplied by the defendants. The defendants' evidence showed that Basham was apparently living at 4174 Dunn Avenue. Although Bonds owns this property, that fact alone is insufficient to confer standing to contest the search. As the Supreme Court has observed, "[w]hile property ownership is clearly a factor to be considered in determining whether an individual's Fourth Amendment rights have been violated, property rights are neither the beginning nor the end" of such an inquiry. *United States v. Salvucci*, 448 U.S. 83, 91, 100 S.Ct. 2547, 2552, 65 L.Ed.2d 619 (1980) (citation omitted). Instead, Bonds has the burden of satisfying a two-part test: (1) did she manifest a subjective expectation of privacy in the premises searched; and (2) is society prepared to recognize that expectation as legitimate. *California v. Ciraolo*, 476 U.S. 207, 211, 106 S.Ct. 1809, 1811, 90 L.Ed.2d 210 (1986); *Rakas v. Illinois*, 439 U.S. 128, 140, 99 S.Ct. 421, 428, 58 L.Ed.2d 387 (1978). Bonds' Fourth Amendment claim is personal, and may not be asserted vicariously. *Rakas*, 439 U.S. at 133–34, 99 S.Ct. at 424–25.

Under these standards, Bonds has failed to establish that she had a reasonable expectation of privacy in the house at 4174 Dunn Avenue. In paragraph V of her complaint, Bonds alleges that "at the relevant time, Plaintiff was temporarily residing with her son in Mississippi, *and there was no one occupying the premises.*" Joint Appendix at 44 (emphasis added). Additionally, Bonds stated in her initial affidavit that:

> "[c]ontinuously from July, 1990 through February 6, 1991, *my home was completely unoccupied and was locked up.* The only time anyone would ever go on the premises would be for the purpose of feeding the dogs. The person who fed the dogs was my son's fiancee, though on rare occasions, my son would also go on the premises to feed the dogs."

J.A. at 38 (emphasis added). These statements clearly show that Bonds was not occupying the house during the relevant time period. In contrast, the defendants' unrebutted evidence shows that Basham was living at Bonds' home during this time. By allowing Basham to live at the house while she lived in Mississippi, Bonds failed to manifest a subjective expectation of privacy in the premises. Accordingly, Bonds does not have standing to contest the search by the officers. *See United States v. Dyar*, 574 F.2d 1385, 1390 (5th Cir.), *cert. denied*, 439 U.S. 982, 99 S.Ct. 570, 58 L.Ed.2d 653 (1978) (defendants with leasehold interest in aircraft lacked standing to challenge search where possession of the aircraft was given to another individual).

Bonds, however, also contends that she has standing based on the unreasonable execution of the search warrant, because the officers "seized" her property within the meaning of the Fourth Amendment when they conducted their search. We agree. A "seizure" of property occurs when "there is some meaningful interference with an individual's possessory interests in that proper-

ty." *Soldal v. Cook County,* —— U.S. ——, ——, 113 S.Ct. 538, 543, 121 L.Ed.2d 450 (1992) (quoting *United States v. Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984)). The damage to Bonds' house, which included broken doors, mutilated vinyl siding, a cracked commode, holes in walls, broken dishes, and trampled personal belongings, clearly rises to the level of a "meaningful interference" with her possessory interests. *See Jacobsen,* 466 U.S. at 124–25, 104 S.Ct. at 1662 (destruction of a quantity of cocaine during testing constituted a seizure, because test affected defendant's possessory interests). The Fourth Amendment protects against a seizure of property even if it occurs in a context in which privacy or liberty interests are not implicated. *Soldal,* —— U.S. at ——, 113 S.Ct. at 545. Thus, our finding that Bonds had no reasonable expectation of privacy in the house at 4174 Dunn Avenue does not affect our conclusion that Bonds has standing to challenge the seizure of her property.

Although we have found that Bonds has standing to assert her property damage claim, we must still address the question of whether the Fourth Amendment is an appropriate vehicle for asserting that claim. In *Miller v. Kunze,* 1988 WL 138916, *5, 1988 U.S.App. LEXIS 17644, *14 (6th Cir. Dec. 28, 1988) (per curiam), this Court stated:

> Even if we were to conclude that plaintiffs had standing, we believe that the plaintiffs' monetary loss occasioned by the police officers' legitimate efforts to ensure public safety should be redressed through appropriate state tort and common-law remedies or, if these are inadequate, under the Fifth Amendment or the due process clause, rather than the Fourth Amendment.

This position, however, was subsequently rejected by the Supreme Court in *Soldal.* In reversing a similar Seventh Circuit holding, the Court observed:

> The Court of Appeals also stated that even if, contrary to its previous rulings, "there is some element or tincture of a Fourth Amendment seizure, it cannot carry the day for the Soldals." ... [T]he court reasoned that it should look at the "dominant character of the conduct challenged in a section

1983 case [to] determine the constitutional standard under which it is evaluated." Believing that the Soldals' claim was more akin to a challenge against the deprivation of property without due process of law than against an unreasonable seizure, the court concluded that they should not be allowed to bring their suit under the guise of the Fourth Amendment.

> But we see no basis for doling out constitutional protections in such a fashion. Certain wrongs affect more than a single right and, accordingly, can implicate more than one of the Constitution's commands.

*Soldal,* —— U.S. at ——, 113 S.Ct. at 548 (citations omitted). Applying this principle to the case at bar, we conclude that Bonds may assert her property damage claim under the Fourth Amendment.

■ Finally, we consider Bonds' claim that the district court improperly denied her motion to alter or amend its grant of summary judgment. Bonds asserts that the additional affidavits that she submitted along with her motion show that there is a genuine issue of material fact with respect to whether Basham was residing at 4174 Dunn Avenue. As a result, she maintains, the district court should have reconsidered its grant of summary judgment on the ground that she lacked a reasonable expectation of privacy in the premises. The unsworn affidavits, however, were technically deficient and should not be considered in making this determination. Unsworn declarations are permitted to be used as evidence only if "subscribed ... as true under penalty of perjury, *and dated* [.]" 28 U.S.C. § 1746 (emphasis added). Although Bonds' additional affidavits were subscribed under penalty of perjury, they were undated. Given the explicit language of the statute, they must therefore be excluded from consideration.

■ We note that, even if we were to consider these technically deficient affidavits, Bonds' argument must fail. The additional affidavits do not present concrete facts that rebut defendants' evidence, and they are also materially inconsistent with Bonds' initial affidavit. Bonds' assertions in the first affidavit that she had never seen anyone of Bas-

ham's physical description, and that such a person had never been in her house, are hard to reconcile with her assertions in the second that Basham had lived with her and was "almost like a child" to her. Bonds' statements in the second affidavit regarding utility usage and other activities at 4174 Dunn Avenue are also inconsistent with her statement in the first that the premises were locked and "completely unoccupied." It is indeed difficult, under these circumstances, to determine how to consider the evidence in the light most favorable to Bonds when her own allegations regarding the crucial issues of fact are in direct conflict. We do not believe that the standard of review for summary judgment described in *Matsushita* requires us to ignore a party's own conflicting statements in construing the facts to her best advantage. *See Gagne v. Northwestern National Insurance Co.*, 881 F.2d 309, 315 (6th Cir.1989) ("a party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts his earlier deposition testimony") (quoting *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir.1986)).

For the foregoing reasons, while Kathy Bonds has no remedy or standing to challenge the search on a reasonable expectation of privacy basis, she does have standing to assert a claim for property damages as a result of the seizure under the Fourth Amendment. We therefore reverse the judgment of the district court and remand the case for resolution of this issue.

CHARLES W. JOINER, Senior District Judge, concurring in part and dissenting in part.

I concur in the majority's opinion insofar as it allows Bonds to challenge the manner in which the search was allegedly executed. *Sodal v. Cook County*, —— U.S. ——, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992). However, I find no legitimate basis in the record to deny Bonds the opportunity to advance her claim that the search violated her right to

privacy, and dissent from the affirmance of the judgment against Bonds on this claim.

As a preliminary matter, I dissent from the majority's discussion of the procedural issues presented by virtue of the district court's dismissal of the case on standing grounds. Standing was not one of the bases on which defendants moved for summary judgment, but merely was mentioned in a single sentence in a reply brief, in the context of defendants' acknowledgment of a fact issue regarding whether Basham lived in Bonds' home with her consent. Understandably, this single reference to standing escaped plaintiff's attention. *See Bonilla v. Nazario*, 843 F.2d 34, 37 (1st Cir.1988). Promptly after the court granted defendants' motion for summary judgment, plaintiff filed a timely motion under Fed.R.Civ.P. 59(e). Due to the ambiguous manner in which standing was raised, and the fact that defendants did not even seek summary judgment on this basis, the district court should have been liberal in affording plaintiff the opportunity to litigate this issue. Instead, it refused to consider her motion and the evidence submitted because it was not offered in a reply to defendants' reply.[1] I would hold that this was error.

When a Rule 59(e) motion seeks reconsideration of a grant of summary judgment, this court conducts de novo review. *Columbia Gas Trans. Corp. v. Limited Corp.*, 951 F.2d 110, 112 (6th Cir.1991). In words repeated so frequently that their import may at times be overlooked, the standard of review requires us to assess the record in the light most favorable to the nonmovant, and draw all reasonable inferences in her favor. *Klepper v. First Am. Bank*, 916 F.2d 337, 341 (6th Cir.1990). Summary judgment has a legitimate and valuable place in the procedural framework of the district courts, as it eliminates the necessity to devote valuable resources to the resolution of cases on which there are no fact issues meriting trial. However, it is not the function of this court or the district court to decide fact questions, but only to determine whether there is sufficient

---

1. The local rule on motion practice in effect in 1992 provided for a response to a motion for summary judgment, but made no mention of a reply to the response, or impose any obligation to reply to a reply. W.D.Tenn.L.R. 8 (1992).

evidence to raise a genuine issue of fact for trial. There is in this case.[2] The critical question is whether Bonds maintained a legitimate expectation of privacy in her home on Dunn Avenue, an issue that cannot be resolved on the record presented.

The majority concludes that Bonds failed to establish that she had a reasonable expectation of privacy in her home based on two factors. First, the majority points to the fact that Bonds, the undisputed owner of the home, had left the home, "*completely unoccupied and ... locked up*" (majority op. at 701), to reside with her son. The record reflects that illness required Bonds to make this move, and that she left her personal belongings and pets at her own home. Her son lived only fifteen minutes away. Rather than indicating that Bonds had no expectation of privacy in her home, these facts point squarely in the opposite direction.

The majority also relies on the "unrebutted evidence" that Basham was living at Bonds' home during this time. From this evidence, and contrary to Bonds' affidavit, the majority infers that Bonds *allowed* Basham to live at her home, and, from this inference, concludes that Bonds failed to manifest a subjective expectation of privacy in the home. Even if it were proper to engage in this type of fact finding in reviewing an entry of summary judgment, the facts found by the majority are not sufficient to justify the dismissal of Bonds' claim.

Like the district court, the majority assumes that *either* Bonds *or* Basham, but not both, could have a privacy interest in the home. Not so. It is well established that more than one person can have a legitimate expectation of privacy in a home. *Minnesota v. Olson*, 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990) (overnight guest has legitimate expectation of privacy in host's home). *Accord United States v. Osorio*, 949 F.2d 38 (2d Cir.1991) (overnight guest); *United States v. Davis*, 932 F.2d 752, 756–57 (9th Cir.1991) (former tenant who retained key, had free access, and stored items in apart-

ment had reasonable expectation of privacy); *United States v. Rettig*, 589 F.2d 418, 423 (9th Cir.1978) (fact that defendant paid portion of rent and had key and unlimited access, sufficient to confer standing to challenge search, even though defendant lived elsewhere).

Just as shared residency does not automatically preclude a resident from having a legitimate expectation of privacy in a home, temporary absence from a home does not automatically deprive its resident of a privacy interest. In *United States v. Robinson*, 430 F.2d 1141 (6th Cir.1970), for example, the court concluded that the defendant had standing to challenge the warrantless search of his apartment, conducted one month after he had been incarcerated, stating that "mere absence from the premises without an intent to abandon could not legitimize [the] search. While the intent of one in possession of property often cannot be directly shown but must be inferred from his actions, abandonment will not be presumed." *Id.* at 1143 (citations omitted). Throughout the short life of this lawsuit, Bonds consistently asserted that the house on Dunn Avenue remained her home, that her belongings were stored there, and that only the persons who cared for her possessions were there with her permission. "One of the main rights attaching to property is the right to exclude others, and one who owns or lawfully possesses or controls property will in all likelihood have a legitimate expectation of privacy by virtue of this right to exclude." *Rakas v. Illinois*, 439 U.S. 128, 143–44 n. 12, 99 S.Ct. 421, 430–31 n. 12, 58 L.Ed.2d 387 (1978) (citation omitted). While factual development of this case through discovery might have demonstrated that Basham's alleged possessory interest in the house was to the exclusion of any interest and right Bonds had, that crucial fact is by no means evident on the record before this court.

We deal here with a fundamental constitutional right, because " 'physical entry of the

---

**2.** While not perfect in form, the declarations made under penalty of perjury which were submitted in support of Bonds' Rule 59(e) motion were entitled to the same weight as sworn affidavits. *See EEOC v. World's Finest Chocolate, Inc.*, 701 F.Supp. 637, 639 (N.D.Ill.1988) (28 U.S.C. § 1746 requires only substantial compliance with its terms, and affiant's failure to date statement is not fatal if date or approximate date is demonstrable).

home is the chief evil against which the wording of the Fourth Amendment is directed.'" *Payton v. New York*, 445 U.S. 573, 585, 100 S.Ct. 1371, 1379, 63 L.Ed.2d 639 (1980) (quoting *United States v. United States District Court*, 407 U.S. 297, 313, 92 S.Ct. 2125, 2134, 32 L.Ed.2d 752 (1972)).[3] The majority's resolution of this case has disturbing implications for persons of all callings and means. Circumstances often require people to leave their homes for months at a time, with most of their personal belongings, from pots and pans to heirlooms and financial records, securely stored in the home. Professors leave for a semester to pursue research or other teaching opportunities. Senior citizens leave their northern homes in the winter to take advantage of the southern climate. Persons experiencing illness or recuperating from surgery reside with their children, parents or friends. Their homes are often left in the care of a live-in or visiting house-sitter. These travellers would be astonished to learn that by leaving their homes in the care of trusted family, friends or neighbors, they relinquished their right to privacy, and thereby granted the police an unfettered right to invade their homes and search their belongings.

The interests at stake are too important, and the court's treatment of them peremptory. I must dissent.

---

**3.** For this reason, I am unpersuaded by the majority's reliance on *United States v. Dyar*, 574 F.2d 1385, 1390 (5th Cir.), *cert. denied*, 439 U.S. 982, 99 S.Ct. 570, 58 L.Ed.2d 653 (1978), where the court held that the alleged lessor of an airplane had no legitimate expectation of privacy because other persons had exclusive possession of the plane. This circuit has recognized that airplanes, like automobiles, are mobile, and seldom serve as " 'one's residence or the repository of personal effects.'" *United States v. Nigro*, 727 F.2d 100, 107 (6th Cir.1984) (en banc) (quoting *United States v. Gooch*, 603 F.2d 122, 124–25 (10th Cir.1979)). These same characteristics, as well as the ease with which an airplane or automobile can be emptied of personal effects and transferred to another, make the comparison with a residence unjustified.