**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0064n.06
Filed: January 18, 2008

**No. 06-4531**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | |
|---|---|
| **RANDY COUNTS**, | ) |
| | ) ON APPEAL FROM THE |
| *Plaintiff-Appellant*, | ) UNITED STATES DISTRICT |
| | ) COURT FOR THE SOUTHERN |
| v. | ) DISTRICT OF OHIO |
| | ) |
| **KRATON POLYMERS, U.S. LLC**, | ) OPINION |
| | ) |
| *Defendant-Appellant*. | ) |

**BEFORE: COLE and COOK, Circuit Judges; MILLS, District Judge.**[*]

**RICHARD MILLS, District Judge.** Plaintiff Randy Counts appeals the

district court's entry of summary judgment in favor of Defendant Kraton Polymers,

U.S. LLC. Finding no error, we affirm.

**I. BACKGROUND**

In 1972, Plaintiff-Appellant Randy Counts began his employment with

Defendant-Appellee Kraton's predecessor, Shell, at its Belpre, Ohio plant. Counts

_____

[*]The Honorable Richard Mills, United States District Judge for the Central
District of Illinois, sitting by designation.

was laid off within a month of starting work but was rehired in 1974. Counts states that upon returning to Shell in 1974, he was promised by three individuals during the interview process that his term of employment would continue for life or until he accrued retirement benefits. During the course of his 29 years of employment prior to his December 2002 discharge, Counts was called upon to perform several different job functions at the plant. Moreover, Counts stated that throughout his employment, his technical performance was always considered to be high.

In 2000, Kraton purchased the assets of Shell and offered jobs to all Shell employees, including Counts. As part of the employment relationship, Kraton agreed to provide all employees in the Belpre plant with a three-step procedure for resolving disagreements and disputes. The Dispute Resolution Procedure ("DRP") was intended to provide "all employees of the Belpre Plant with a means of obtaining a definitive response to questions, complaints, misunderstandings, or disagreements involving personnel policies and procedures and create a forum for the employee to resolve a dispute."

On October 30, 2000, Kraton provided Counts with a written "Offer of Employment" stating in part:

> I wish to welcome you to KRATON Polymers under the terms set out in this letter. . . . Although we hope you choose to have a long career with KRATON Polymers, any employment relationship by law is one that

requires the mutual consent of both employee and employer. This offer is not to be, and may not be considered, a contract of employment for a specific period of duration. Employment is "at will" and either the company or the employee may terminate the employment relationship at any time.

Counts signed the Offer of Employment, thereby agreeing to its terms. Counts never asked any questions about that document's contents or had any discussions with Kraton management about it. At the time of his discharge, Counts was a senior technician in the effluent division, responsible for monitoring the process whereby the plant's wastewater is treated and cleaned before being released into the Ohio River.

Kraton employees such as Counts who worked in safety and environmentally sensitive positions are required to undergo random substance abuse testing. In May 2000, Counts underwent a drug test pursuant to that policy. Counts tested positive for cocaine, which he admitted having used, and was instructed by Shell to contact one of its drug counselors. The counselor informed Counts that in order to continue his employment, he had to satisfy certain conditions. Counts signed a return to work agreement on May 24, 2000, which required him to submit to periodic substance abuse testing for 48 months following his return to work. The agreement provided that "[t]he results of these tests must be negative," and that termination could result from a failed test.

3

On December 6, 2002, Counts's direct supervisor, Gary Bennett, told him to report to plant nurse Deena Deem's office for a substance abuse test. Counts reported to Nurse Deem's office, went into the office's private bathroom, and thereafter handed Nurse Deem a purported urine sample, which she split into separate sealed containers for submission to an independent, third-party drug testing lab. Approximately one week later the lab, Quest Diagnostics, reported that Counts's sample was "Substituted." Pursuant to Kraton's drug testing policy, the still-sealed second sample container was sent to another independent drug analysis company, LabOne, which also found that Counts's sample was "Substituted" and was "[n]ot consistent with normal human urine."

Approximately one week later, Gary Bennett and Human Resources Manager Wendell Mulford informed Counts of the test results and asked him whether he had any information that might explain the results. Counts said that he had not done anything to the sample. Counts was told that he would not be allowed to work that night and that he should wait to hear from Kraton before reporting to work again. Mulford and Bennett asked Counts to call them if he could provide any additional information to explain the results. He never called.

Counts emphasizes that he never tested positive for the presence of drugs after the first positive test in May 2000. According to Section (D)(3)(e) of Kraton's

Substance Abuse Policy, "Termination of employment will normally occur" after "[a] second positive test following a prior Company initiated positive test where employment has been continued." According to Counts, the requirement of "a second positive test" was the sole operative term in the Policy describing the circumstances for terminating an employee who had previously tested positive.

On December 26, 2002, Counts was informed that his employment was terminated due to the result of his December 6 substance abuse test. According to Kraton, Counts was replaced by Danny Gandee who was 54 years old at the time. Counts asserts that although he eventually was replaced by Gandee, he was succeeded for several months by Michael Isner, who was 42 years old.

Counts filed this action, alleging that his termination was (1) based on his age (48), in violation of Ohio Rev. Code §§ 4112.4 and 4112.99; (2) retaliatory within the meaning of Ohio Rev. Code § 4112.02; (3) a breach of contract; and (4) improper under the doctrine of promissory estoppel.

On April 28, 2006, Kraton moved for summary judgment as to each of Counts's claims. On June 6, Counts filed his brief in opposition to the motion; two days later, he filed an unsworn and undated declaration. On June 12, 2006, Kraton moved to strike Counts's declaration; Counts then filed a second declaration. Counts subsequently moved to strike Kraton's reply brief, which Kraton had labeled a

memorandum of law in further support of its motion for summary judgment. Alternatively, Counts requested leave to file a supplemental memorandum in opposition to the summary judgment motion. Counts filed a "rebuttal declaration" and a sur-reply, or "supplemental memorandum," the following day, without having received the previously requested leave of court.

The district court struck Counts's undated declarations, concluding that "it is not permissible to present an undated declaration that lacks a discernible signing date as summary judgment evidence." The court also observed that the declarations were not timely, as Kraton had argued in its motion. In denying Counts's motion to strike Kraton's memorandum in further support of its summary judgment motion, the district court concluded that the title of a brief is not material, that the alleged "new arguments" contained in Kraton's reply brief directly addressed arguments made by Counts in his brief in opposition, and that Kraton had the right to submit Mulford's affidavit to address arguments Counts raised in opposition. The district court also struck Counts's unauthorized sur-reply.

The district court then granted Kraton's motion for summary judgment. The court determined that Counts's age discrimination claim failed because his replacement is older than he is, and the only other Kraton employees who failed second drug tests were also discharged, and because he failed to establish that

6

Kraton's legitimate, non-discriminatory reason for his discharge (his second failed drug test) was pretextual. The district court also concluded that Kraton was entitled to summary judgment on Counts's retaliation claim because he did not establish a causal connection between his purported protected activities and his termination, nor did he establish that Kraton's articulated non-retaliatory reason for his discharge was pretextual. The court also granted summary judgment to Kraton on Counts's breach of contract claim, finding that the DRP did not create any "applicable or invoked contract rights." Finally, the district court dismissed Counts's promissory estoppel claim, finding that the alleged oral promises of lifetime employment many years prior to his discharge were "of such general and vague nature that they can hardly be said to be clear and unambiguous promises upon which Counts could reasonably rely."

Counts raises several issues on appeal, which we address in turn.

## II. DISCUSSION

### A. Standard of Review

We review the district court's grant of summary judgment *de novo*. *Briggs v. Potter*, 463 F.3d 507, 511 (6th Cir. 2006). The entry of summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of

law." Fed. R. Civ. P. 56(c). "We must view all facts and inferences drawn therefrom in the light most favorable to the nonmoving party." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 349 (6th Cir. 1998) (citation omitted). Evidentiary issues such as a district court's refusal to consider an affidavit are reviewed for abuse of discretion. *Briggs*, 463 F.3d at 511. "A district court abuses its discretion when it relies on erroneous findings of fact, applies the wrong legal standard, misapplies the correct legal standard when reaching a conclusion, or makes a clear error of judgment." *Id*. (citation and internal quotation marks omitted).

**B. Evidentiary issues**

Counts contends that the district court committed error in granting summary judgment based on its belief that it was **required** to strike, *sua sponte*, each of his three separate declarations as undated, "[p]ursuant to the binding precedent" of *Bonds v. Cox*, 20 F.3d 697, 702 (6th Cir. 1994). Because the June 8, 2006 declaration was filed two days after the deadline for filing Counts's opposition brief, Kraton moved to strike the declarations as untimely. Kraton asserts that the district court's decision to strike Counts's declarations comports with the law of this Circuit and with clear statutory language. "Unsworn declarations are permitted to be used as evidence only if 'subscribed . . . as true under penalty of perjury, *and dated*.'" *Bonds*, 20 F.3d at 702 (quoting 28 U.S.C. § 1746) (emphasis in *Bonds*).

8

Counts alleges that eight years after *Bonds*, this Court re-addressed the "date" requirement when it observed that "courts have held that the absence of a date on such documents does not render them invalid if extrinsic evidence could demonstrate the period when the document was signed." *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 475-76 (6th Cir. 2002) (citation omitted). Counts asserts that in this case, the approximate dates of signature for each of his declarations in the present case are easily ascertainable.

We conclude the district court did not abuse its discretion in striking the declarations. As Kraton contends, this court in *Peters* did not overturn the decision in *Bonds*. Moreover, the applicable statute requires that unsworn declarations be dated. *See* 28 U.S.C. § 1746. Thus, striking the declarations was not an abuse of discretion.[1]

Counts contends that the district court also committed error in granting summary judgment based on the "new" affidavit of Wendell Mulford and Kraton's "supplemental memorandum of law in further support" of its summary judgment

---

[1]Counts points to a number of district court decisions which he contends reject the rigid approach of the court below in favor of an approach consistent with this court's reasoning in *Peters*. Those cases relied on by Counts are examples of district courts exercising their discretion. This court's task is to determine whether the district court abused its discretion and, as Kraton alleges, Counts has pointed to no case in which a court of appeals found that a district court had abused its discretion by either considering or refusing to consider an undated declaration.

motion (which more appropriately would be referred to as a "reply brief"), while denying Counts an opportunity to respond.

Counts contends that in granting summary judgment, the district court relied upon several arguments and items of evidence raised for the first time in Kraton's reply brief. However, these arguments were raised in Kraton's initial brief in support of its summary judgment motion and in Counts's memorandum in opposition. The district court did not err in declining to strike the reply brief.

The Mulford affidavit was attached to Kraton's reply brief. In a footnote in his appellate brief, Counts alleges that the Mulford affidavit failed to satisfy the requirement of Federal Rule of Civil Procedure 56(e) that it demonstrate the affiant's competence to testify about the matter set forth in the affidavit. Counts did not object to the affidavit before the district court and does not specifically allege why Mulford is not competent to testify about the matters set forth in the affidavit. After reviewing the affidavit, we conclude that based on Mulford's status as human resources manager of Kraton, he was competent to make the statements contained in his affidavit.[2] We also conclude the district court did not abuse its discretion in striking Counts's sur-

---

[2]Counts also complains that the district court did not strike the affirmation of Laura Sack, which was filed in support of Kraton's motion to strike, even though like Counts's three declarations, it did not bear a date. Counts does not say whether he moved to strike the affirmation. There is nothing in the record indicating that he filed a motion to strike.

reply.

For the reasons that follow, we conclude that even if the district court erred with respect to an evidentiary ruling, any error was harmless.

**C. Counts's age discrimination claim under Ohio law**

The plaintiff has the initial burden of establishing a *prima facie* case of discrimination under Ohio Rev. Code § 4112.14(A) by demonstrating each of the following: (1) he was a member of a statutorily protected class; (2) he was discharged; (3) he was qualified for his position; and (4) he was replaced by, or his discharge permitted the retention of, a person of substantially younger age. *Coryell v. Bank One Trust Co. N.A.*, 101 Ohio St.3d. 175, 180, 803 N.E.2d 781, 787 (2004). If the plaintiff establishes his prima facie case, the employer may overcome the presumption of discrimination by articulating a legitimate, non-discriminatory reason for the employment action. *Mauzy v. Kelly Services, Inc.*, 75 Ohio St.3d 578, 582, 664 N.E.2d 1272, 1276 (1996). The plaintiff must then show that the employer's articulated reason was a pretext for discrimination. *Id.*

The district court concluded that Counts failed to establish the fourth element of his prima facie case.[3] Counts contends that in rejecting his counter-evidence, the

[3]Kraton also continues to assert Counts cannot meet the third element by demonstrating that he was qualified for his position, based on his failure to obtain a satisfactory result on his drug test. The district court rejected this argument on the basis of *Cline v. Catholic Diocese of*

11

district court "accepted at face value" Kraton's assertion that "The only moderately younger [Mr.] Isner, however, was a cross trained employee who[m] KRATON drew from a pool of employees to perform Count[s]'s duties until Gandee was identified as the replacement through KRATON's bidding process."

Counts claims that a reasonable juror could have rejected Kraton's claim and found that Isner had, by himself, taken on the duties of Counts while shedding his previous duties. Moreover, Counts alleges there are factual disputes regarding whether Isner had been trained to fulfill his duties and that no one else was even considered for such an assignment.[4] Counts also contends, "A reasonable juror could further find that Mr. Isner performed these duties indefinitely and was performing these duties when official company policy decreed that a permanent replacement be assigned."[5]

---

*Toledo*, 206 F.3d 651, 660-61 (6th Cir. 2000), wherein this Court determined that at the prima facie stage of a discrimination case, "a court must examine plaintiff's evidence independent of the nondiscriminatory reason 'produced' by the defense as its reason for terminating plaintiff."

[4]Counts purports to support these assertions by citing to paragraphs 9 and 10 of the Mulford affidavit. However, the Mulford affidavit does not support these statements. Presumably, Counts is arguing that a juror could simply not believe the statements contained in the affidavit. To get to that point, however, Counts must do more than simply deny the allegations. *See* Fed. R. Civ. P. 56(c).

[5]Counts relies on paragraph 12 of the Mulford affidavit for this assertion. Paragraph 12 reads, "KRATON posted Plaintiff's position on January 1, 2003, six days following his discharge on December 26, 2002. On January 15, 2003, less than three weeks after Plaintiff was discharged, KRATON announced that Dan Gandee was the successful bidder and would assume Plaintiff's position. Mr. Gandee was 54 years of age on January 15, 2003." It appears that

12

A temporary assumption of a departed employee's duties does not constitute replacement under Ohio law. "A person is 'replaced' only when another employee is hired or reassigned to perform that person's duties." *Atkinson v. International Technegroup, Inc.*, 106 Ohio App.3d 349, 359, 666 N.E.2d 257, 264 (Ohio 1st App. Dist. 1995). "A person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work." *Id*. (citation omitted). Counts asserts that Isner's sole duty was to replace him. Counts seems to suggest, therefore, that because Isner was not performing any other duties, Isner was in fact his replacement.

Counts claims that a reasonable juror could also give significant weight to Kraton's rules requiring that a vacancy be filled within 30 days, a statement which contains no citation to the record. Counts emphasizes that Isner remained in his former position for 100 days after his termination. However, Counts does not dispute that it was less than three weeks after his discharge that Kraton announced Gandee would assume his position. Moreover, he does not dispute Kraton's assertion that Gandee did not start until April 6, 2003 because he had to remain in his former

Counts is emphasizing that Isner continued to perform Counts's former duties for three months after Gandee was announced as the new hire.

13

position until his successor became qualified. The record demonstrates that Counts was replaced by Gandee.

Based on the foregoing, we conclude that the record shows Isner was temporarily assigned to Counts's job until Gandee was available to take over. Accordingly, the district court correctly determined that Counts did not show he was replaced by someone substantially younger. Counts is unable to establish a prima facie case of age discrimination under Ohio law based on his termination.

Counts next asserts that the record shows evidence of disparate treatment wherein Kraton treated younger workers more favorably than older workers, thus raising the inference of intentional discrimination. Specifically, he argues there was age discrimination in the administration of drug tests, claiming that three younger employees who were not similarly situated to Counts were allowed to retake drug tests while he was not. Two of these individuals retook their drug tests because their urine sample container seals were broken when received by the lab. The third individual submitted a sample which did not contain enough urine for testing. Counts contends that a reasonable juror could have concluded that the record is devoid of evidence that Counts caused or contributed to the testing problems in the sample, and that Kraton's claim is based on speculation. Counts further asserts that he complied with all test procedures and that when the sample left his custody and control, it

14

appeared regular and entirely consistent with human urine.[6]

The district court concluded that the three alleged comparators' specimens "could not be tested for reasons beyond their control," which "stand in contrast to Counts's situation, and to accept them as analogous or fairly comparable would be to permit Counts to survive summary judgment by embracing an absurd level of abstraction under which every set of facts would apply."

The district court correctly determined that Counts was not similarly situated to the younger employees who he claims were treated more favorably. Pursuant to Kraton policy, no one observed Counts supplying his urine sample. Kraton relied on the findings of two independent labs which found that Counts had submitted something other than human urine. In disputing this, Counts essentially relies only on his own assertion that when the sample left his custody, it appeared entirely consistent with human urine. Kraton states, moreover, that besides Counts, only two employees have failed to pass a second substance abuse test since the policy was adopted in 1991. The employees were younger than Counts (45 and 47 years old), and both were discharged. As the district court noted, "These individuals are closer to Counts' rather unique situation in that they also failed to pass second drug tests."

---

[6]Kraton notes that Counts testified at deposition that when he handed the sample to the nurse she said something like, "[W]ell, this looks awfully clear. . . .you must have been drinking a lot of water."

15

The district court correctly determined that Kraton was entitled to summary judgment on Counts's age discrimination claims under Ohio law.

**D. Counts's retaliation claim under Ohio law**

Counts argued before the district court that Kraton discharged him in retaliation for his participating in union-organizing activities, for filing safety reports, and for complaining about the company's safety standards. The Ohio statute under which Counts asserts his retaliation claim provides:

> It shall be an unlawful discriminatory practice . . . [f]or any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under sections 4112.01 to 4112.07 of the Revised Code.

Ohio Rev. Code § 4112.02(I).

To prove a prima facie case of retaliation, a plaintiff must demonstrate that "(1) she engaged in a protected activity; (2) her employer knew about the protected activity; (3) her employer took adverse employment action against the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action." *Hollingsworth v. Time Warner Cable*, 157 Ohio App.3d 539, 553, 812 N.E.2d 976, 987 (Ohio 1st App. Dist. 2004). The test under state law is basically the same as under federal law. *Id*. "If the plaintiff establishes a prima facie

16

case, then the burden shifts to the employer to 'articulate some legitimate, non-discriminatory reason' for its actions." *Id*. at 553-54, 812 N.E.2d at 987. If the employer meets its burden, the plaintiff then must show that the articulated reason was a pretext. *Id*. at 554, 812 N.E.2d at 987.

The district court concluded that even assuming Counts engaged in protected activity, he has failed to demonstrate the requisite causal connection between the alleged protected activity and his termination. The court determined that because of the attenuated length of time of six weeks to several months, Counts was unable to establish a causal connection. On appeal, Counts asserts that "the record is replete with facts from which a reasonable juror could reject Appellee's proffered reason as pretextual."[7] However, Counts provides no citations to the record. Counts makes general statements wherein he alleges a reasonable juror could reject Kraton's efforts to justify its difference in treatment in re-administering the test to younger workers. Moreover, he contends that a juror could find that Kraton relies on numerous inconsistencies and contradictions. Counts also argues (without any citation to the record) that Kraton made false representations regarding when Counts reported safety and environmental violations and about whether his complaints were limited to union

---

[7]Counts does not specifically address the district court's finding that he failed to establish his prima facie case because he could not show the requisite causal connection.

17

organizing activities.

We conclude that the district court correctly determined Kraton was entitled to summary judgment because Counts failed to show a causal connection between any of his alleged protected activity and his termination.

**E. Breach of contract and promissory estoppel**

Counts alleges that Kraton's DRP limited its right to terminate his employment at will. The district court granted summary judgment to Kraton, finding that there was no proper summary judgment evidence in the record supporting Counts's allegation that he had ever requested a review of his termination under the DRP or that it applied to such terminations.

Counts contends that at some point before his termination, he asked Gary Bennett about the DRP and was told that it does not apply and that he would have to submit a written request in any event. Counts argues that "[a] reasonable juror could determine that Appellee breached its duty of good faith by ignoring Mr. Counts' verbal request and by requiring that he submit a handwritten request, while preventing him from submitting the request by removing him from the plant."

It appears that Counts inquired about the DRP only on that one occasion and never submitted a written request. More importantly, it does not appear that the DRP applied to terminations. The DRP "is intended to provide all employees . . . with a

18

means of obtaining a definitive response to questions, complaints, misunderstandings, or disagreements involving personnel policies and procedures and create a forum for the employee to resolve a dispute." Counts seems to argue that the absence of any language in the DRP concerning disciplinary actions creates a factual issue as to whether it applies to such actions. However, Human Resources Director Wendell Mulford stated that the DRP does not provide for and has never been used to contest disciplinary decisions. Counts does not properly dispute this assertion.

Counts signed an express-at-will employment agreement with Kraton in 2000 that specifically provided either party "may terminate the employment relationship at any time." Because the record establishes Counts was an at-will employee, the district court properly determined Kraton is entitled to summary judgment on his breach of contract claim.

Counts next alleges that he had an oral contract for lifetime employment. The Ohio Supreme Court has explained how the doctrine of promissory estoppel applies in at-will employment cases:

> [T]he doctrine of promissory estoppel is applicable and binding to oral employment-at-will agreements when a promise which the employer should reasonably expect to induce action or forbearance on the part of the employee does induce such action or forbearance, if injustice can be avoided only by enforcement of the promise.
>
> The test in such cases is whether the employer should have

19

reasonably expected its representation to be relied upon by its employee and, if so, whether the expected action or forbearance actually resulted and was detrimental to the employee.

*Mers v. Dispatch Printing Co.*, 19 Ohio St.3d 100, 105, 483 N.E.2d 150, 155 (1985).

At his deposition, Counts stated that his promissory estoppel claim is premised on what three unnamed Shell employees told him in 1974–that he would be hired for a "permanent position" and "as long as [he] performed [his] duties to the best of [his] ability, that he would be there for life or until [he] reached retirement." This claim has no merit based on the At-Will Employment Agreement signed by Counts when he began his employment with Kraton in 2000. "[S]tanding alone, praise with respect to job performance and discussion of future career development will not modify the employment-at-will relationship." *Helmick v. Cincinnati Word Processing, Inc.*, 45 Ohio St.3d 131, 135-36, 543 N.E.2d 1212, 1216 (1989). Reliance by Counts on such a promise would not have been reasonable. As the district court observed, moreover, "it is doubtful that failing to pass a drug test constitutes the desired performance contemplated by the employer."

For the reasons set forth above, the judgment of the district court is **affirmed**.